LEWIS and others *vs.* McMILLEN and others.

31b 395
o167a111

At law, a vendor cannot recover the purchase money agreed to be paid by the purchaser, nor the amount of a note given as collateral security for the payment of an installment thereof, unless he is able to give a good title to all the lands described in the agreement.

The fact that the purchaser still remains in possession of the premises, and has not surrendered the same to the vendor, will not prevent his setting up, as a defense to an action on a note given for the purchase money, the inability of the vendor to give a good title to a portion of the premises.

THIS action was brought to recover the amount of a promissory note for $1000, made by the defendant McMillen as principal and the other defendants as his sureties, and was tried at the Ontario circuit in April, 1859. It was proved on the trial that the plaintiffs, who were assignees of one Cuyler Trask, on the 21st April, 1857, entered into a contract with McMillen to sell to him a farm in the town of Victor, containing about 96 acres of land, at $34.50 per acre. By the contract McMillen agreed to pay $1500 of the purchase money as follows: $300 on the 15th May, 1857; $200 on the 1st day of November, 1857, and $1000 on the 1st day of May, 1858. A deed was then to be executed and a bond and mortgage given by McMillen for the residue of the purchase money. The note in

suit was given as a further collateral security for the payment of the $1000 installment, payable the 1st day of May, 1858. McMillen entered into possession of the farm at or about the date of the contract, and paid the first two installments of $300 and $200 promptly. Before the 1st of May, 1858, Mc-Millen had discovered that as to 18 acres of the farm the plaintiff had no title. And on that day McMillen tendered to the plaintiff the amount of the installment then due, and required the plaintiffs to give him a conveyance which should vest in him the title to the whole land purchased. This the plaintiffs declined to do, on the ground that they were unable to give a perfect title. McMillen, who offered to give the bond and mortgage specified in the contract, after the refusal of the plaintiffs to give the deed, further offered to surrender the possession of the premises, and required the plaintiffs to refund what he had paid. This the plaintiffs declined. At this interview it was agreed between the parties, that they would postpone the time for performance of the contract to the 5th day of May, and would meet on that day at Canandaigua. On the 5th May the parties again met, at Canandaigua, and the plaintiffs offered to execute a deed of the farm, but did not claim, then, that they had any title to 18 acres of the land. It was proved on the trial, that the farm was occupied by one Norman Brace, who claimed the same as owner, prior to 1808, in which year he died intestate, without issue, leaving a widow. The land then passed by inheritance to Joseph Brace, the father of Norman. Joseph Brace, in 1809, conveyed the undivided half of the land to Joanna Brace, the widow of Norman; and in 1813 died intestate, leaving several children his heirs at law. There was a parol partition between the heirs of Joseph Brace and Joanna Brace, by which one half the farm, including the 18 acres, was set off to the heirs of Joseph Brace in severalty. Joseph Brace being indebted at the time of his death and his personal estate being insufficient to pay his debts, the half of the farm so set apart to the heirs of Joseph Brace was ordered by the surrogate of Ontario

county, to be sold by his administrators. The administrator sold under his order, all except the 18 acres above mentioned, and realized sufficient from the sale to pay the debts, leaving the 18 acres the property of Brace's heirs. Joanna Brace, after the partition, married one Isaac Marsh, and with her husband continued to occupy the half of the farm set off to her, until her death. The 18 acres above referred to was not cultivated. It was wood land. Mrs. Marsh occupied some part of it during her life, but uniformly disclaimed any title or ownership to it. The judge at the circuit decided that the defendants had failed in their defense; that before McMillen could set up the breach claimed, by reason of the defect in the plaintiffs' title, he must surrender the possession of the premises to the plaintiff; that so long as he continued in possession he must be deemed to have elected to continue the contract in force, and directed the jury to find for the plaintiff, and they found accordingly.

The defendants' counsel excepted to the ruling and decision of the judge. The exceptions were ordered to be heard in the first instance at the general term.

*S. Mathews,* for the appellants.

*James C. Smith,* for the plaintiffs.

*By the Court,* E. DARWIN SMITH, J. The promissory note upon which this action is brought being collateral to the installment of the same amount upon the contract between the plaintiffs and the defendant McMillen, an action thereupon clearly cannot be maintained, unless the plaintiff could maintain an action on the contract, for the principal debt. By the terms of the contract, the defendant McMillen was to pay the $1000, the amount of the note, to the plaintiffs, on the 1st of May thereafter, (May 1st, 1858,) and on such payment the plaintiffs were to convey, by a good and sufficient deed, the premises therein described; and McMillen was also, at the

same time, to execute a bond and mortgage for the balance of the purchase money. These acts were to be performed simultaneously. In such cases neither party can maintain an action without showing performance, or an offer to perform, on his part. (*Tompkins* v. *Elliott,* 5 *Wend.* 498. *Judson* v. *Wass,* 11 *John.* 525. 20 *id.* 15.)

If this action were upon the contract, the plaintiff would be bound to aver the delivery, or a tender, of a deed sufficient and effectual to pass a good title to all the premises described. (*Fletcher* v. *Button,* 4 *Comst.* 396.) But the action being upon the note, the plaintiff was not bound to count upon the contract, or refer to it in his complaint. While this does not affect the substantial rights of the parties, it casts upon the defendants the burden of showing the plaintiffs' default, by way of defense. This the defendants attempted to do, at the trial, by showing that they were ready on the 1st of May to pay the $1000, and offered to perform, but the plaintiffs did not perform in fact, and were not ready or able to perform on their part, but in fact had not and could not give a good title to all the premises described in the contract. The disposition of the cause at the circuit assumes that the defense was so far established. The case was withdrawn from the jury and a verdict ordered for the plaintiff, on the express ground that the defendant could not set up the breach of the contract by the plaintiff, by reason of the defect in their title, until McMillen had first surrendered the possession of the premises; and that so long as he remained in possession he must be deemed as having elected to continue the contract in force. This, it seems to me, was a mistaken view of the rights of the parties as they appeared at the trial. The ruling at the circuit would have been entirely correct if the defendant McMillen had been plaintiff and the action had been brought to recover the consideration money paid on the contract. In such case a party se ..ng to rescind a contract must restore all he has received under it and place the opposite party in

his original position. (14 *Barb.* 294. 2 *id.* 82. 2 *Hill,* 288. 1 *Denio,* 73.)

But this is not the case of the rescission of a contract. The defendants did not seek to rescind the contract. They simply resisted, by way of defense, the claim of the plaintiffs to compel performance on the part of McMillen, while the plaintiffs themselves were in default, and were not able to perform.

Certainly, if the plaintiffs cannot give a good title to this farm, they should not recover the amount of the note. It may be that in equity the plaintiffs may compel a specific performance of this contract, as was done in the case of *More* v. *Smedburgh,* (8 *Paige,* 600.) But at law they cannot recover on it or on the note in this suit given as collateral thereto, unless they can give a good title to all the lands therein described. I cannot conceive how the possession by McMillen of the farm has any thing to do with the question whether the plaintiffs can maintain an action at law on the contract of McMillen or the note of the defendants. I think there should be a new trial, with costs to abide the event.

[MONROE GENERAL TERM, March 5, 1860. *Welles, Johnson* and *Smith,* Justices.]