Hill *v.* Hill.

Previous to the adoption of the revised statutes, an executory devise limited upon an indefinite failure of issue was void, because it might not vest within the compass of twenty-one years and nine months after a life or lives in being.

Where an executory devise was made dependant on the first taker's " dying without lawful issue," such words, unexplained, had a fixed legal signification, and imported an indefinite failure of issue, and not a failure of issue living at the death of the first taker.

A different interpretation will, however, be given to such and similar words where there are other provisions of the will showing that the testator intended a failure of issue living at the death of the first taker.

Where an executory devise, limited upon the first taker's *dying without lawful issue* was made subject to the payment, by the executory devisee, of legacies to three persons then in being, when they should severally become of age, it was *held* that the testator did not contemplate an indefinite failure of issue, but that he must have intended the estate to vest on the death of the first taker.

An executory devise is void where it is repugnant to the absolute ownership and power of disposal given to the first taker.   Otherwise when the *jus disponendi* is conditional.

Where the testator devised land to T., his heirs and assigns forever, provided the said T. should not sell the same within fifteen years, unless to one of his children ; and in case said T. died without lawful issue, the estate to go to A., his heirs and assigns forever, it was *held* that the devise to T. was subject to two conditions ; and that if he sold to one of his brothers within the fifteen years, or to any other person after that time, the grantee in either case, would take the land subject to the other contingency, viz. the death of T. without lawful issue.

The mere taking of a quit-claim deed does not estop the grantee from questioning the title of his grantor.   The rule is otherwise, as between vendor and vendee before conveyance, and between landlord and tenant.   In both these cases the possession must first be surrendered before the title can be questioned.

There is no estoppel except where the occupant is under an obligation, express or implied, to restore the possession at some time or in some event.

But where by an indenture freely executed between the parties, T. covenanted that if a certain condition was not performed within a stipulated time, A. might enter upon, and hold, and enjoy the premises, he was held to be estopped from questioning A.'s right.   '

And where a party is estopped by deed, all persons claiming under or through him, are equally bound by the estoppel.

THIS was an action of ejectment brought by Patience Hill against Whiteside Hill, to recover land lying in the county of Washington. The cause was tried before WILLARD, circuit judge, at the Washington circuit, in October, 1845. The following facts appeared on the trial. Alexander Hill died seised of the premises in question, in 1809, leaving a last will and testament, which contained the following devise:

"Item. And whereas I have heretofore by my several deeds of conveyance, given and granted to my sons, William Hill, James Hill, Peter Hill, and Whiteside Hill, such parts and proportion of my landed estate as I intend, therefore I give and devise unto my son Thomas Hill, all the residue of my real estate, and to his heirs and assigns forever. Provided always and my will is, that the said Thomas shall not sell or convey the estate hereby devised to him, within fifteen years after my decease, *unless such sale shall be made to some one of my children; and in case my said son Thomas shall die without lawful issue,* then and in such case, the said real estate is hereby given and devised to Alexander Hill, my grandson, the son of James Hill, and to his heirs and assigns forever; subject to the payment of one hundred dollars to Alexander Hill, the son of Peter Hill, when of age; of one hundred dollars also to my grandson Alexander Hill the son of Whiteside Hill, when of age; and one hundred dollars to my grandson Alexander, the son of Francis McLean, when he comes of age."

It was admitted that the premises claimed in the declaration were included in the above devise, and were in the possession of the defendant at the time of the commencement of this suit.

Thomas Hill died in November, 1842, leaving seven children. The maiden name of the mother of said children, was Polly Pitts. She was married to said Thomas Hill, by Charles F. Ingalls, Esq., a justice of the peace of Washington county, in 1827. She had three children by said Thomas Hill, before said marriage, and four afterwards. The said Polly, previous to her marriage with Thomas Hill, and previous to the birth of said children, had been legally married to one George Foree,

who was still living at the time of the trial. Such marriage had never been dissolved or annulled. Thomas Hill was never married to any one except said Polly, and left no children except those born of said Polly. Alexander Hill, the grandson of the testator, and son of James Hill, named in said will, died in February, 1844, leaving no widow, but five lawful children, his heirs at law, of whom the plaintiff in this suit was one, who was over 21 years of age when this suit was brought. Both Thomas Hill, and said Alexander Hill, the son of James Hill, died before this suit was commenced. Alexander the son of Peter Hill, Alexander the son of Whiteside Hill, and Alexander the son of Francis McLean, were still living, and the youngest of them was born in 1806.

On these facts the plaintiff rested; when the defendant moved for a nonsuit on two grounds: 1st. That the executory devise over to Alexander Hill, the father of the plaintiff, was void for being too remote, and contemplating an indefinite failure of issue. 2d. That the limitation of said real estate over to Alexander Hill, the father of the plaintiff, was void as being repugnant to the absolute ownership and power of disposal given to Thomas Hill by the said will. The circuit judge sustained these objections, and decided that the action could not be maintained; and the plaintiff's counsel excepted.

The counsel for the plaintiff then offered to read in evidence the following instrument, the execution of which was admitted:

"Whereas, Alexander Hill, late of Cambridge, in the county of Washington, deceased, in and by his last will and testament, bearing date the twenty-second day of December, in the year of our Lord one thousand eight hundred and eight, did, among other things devise as follows, [reciting the clause of the will above set forth.] Now this indenture made the sixteenth day of May, in the year of our Lord one thousand eight hundred and eighteen, between Alexander Hill of the town of Cambridge, in the county of Washington, son of James Hill of Cambridge, aforesaid, the persons named in the said in part recited will, of the first part, and Thomas Hill of Cambridge aforesaid, of the second part, witnesseth that the said party of the first

part for and in consideration of the sum of one hundred dollars, money of account of the United States, to be paid as is hereinafter mentioned, hath granted, bargained, sold, released and quit-claimed, and by these presents doth grant, bargain, sell, release and quit-claim unto the said party of the second part, his heirs and assigns forever, all his right, title, claim, interest and demand of, in, to or out of the said real estate so devised to the said Thomas Hill, and in case of his death without lawful issue to the said Alexander Hill, his heirs and assigns. Together with all and singular the rights, members, privileges and appurtenances thereunto appertaining and belonging, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. To have and to hold the same, to the said party of the second part, his heirs and assigns, upon the *express condition*, that the said party of the second part shall within four years from the date hereof, pay to the said party of the first part, his heirs, executors or administrators, the sum of one hundred dollars with interest, *and upon the further condition*, that if it shall happen that the said Thomas Hill shall die without lawful issue, then the said executors, administrators or assigns of the said Thomas shall pay to Alexander Hill the son of Peter Hill, and to Alexander Hill the son of Whiteside Hill, and to Alexander the son of Francis McLean, the sum of one hundred dollars each, and cause the said Alexander to be wholly exonerated therefrom according to the true intent and meaning of the aforesaid last will and testament. And it is hereby mutually covenanted and agreed, that if it shall happen that the said Thomas shall die without lawful issue, and this last condition shall not be fully and completely performed within six months from his decease, then, and in that case, it shall and may be lawful for the party of the first part, his heirs or assigns to enter upon the said premises, and have, hold, and enjoy the same as his and their own, without any let, hindrance or molestation of the party of the second part, his heirs or assigns. And it is further covenanted and agreed, that if it shall happen that the sum of one hundred dollars above mentioned to be paid, to the party of the first part, shall not be paid

as above mentioned, it shall and may be lawful for the party of the first part, his heirs or assigns, to enter upon the premises so devised to the said Thomas Hill, and to hold and enjoy the same, until he or they shall have received the said sum with interest and costs out of the rents and profits thereof.

In witness whereof, the parties have hereunto set their hands and seals the day and year above written.

Signed, sealed and delivered in presence of J. Williams.

[Signed]          THOMAS HILL,      [L. S.]
                  ALEXANDER HILL."   [L. S.]

The plaintiff offered also to prove that the three legacies of one hundred dollars each mentioned in the will to be paid to Alexander the son of Peter Hill, to Alexander the son of Whiteside Hill, and to Alexander the son of Francis McLean, had not nor had any part of them, been paid, though payment of the same was demanded by the legatees, from the executors of Thomas Hill eight months after the death of said Thomas Hill. It was conceded that the executors of said Thomas Hill did not know of the provisions in the agreement of 16th May, 1818, for the payment of said legacies, till about eight months after the death of said Thomas Hill. All this evidence was rejected by the circuit judge, who directed a nonsuit to be entered. To which decision the plaintiff's counsel excepted, and moved for a new trial, on a bill of exceptions.

*E. D. Culver*, for the plaintiff.

*Charles F. Ingalls*, for the defendant.

*By the Court*, PARKER, J. The first question to be determined in this cause, is whether Alexander Hill, the son of James Hill and grandson of the testator, took any estate under the will. This depends upon the legal construction applicable to the language of the devise when the will took effect, which was in 1809. The testator devised the real estate to his son Thomas Hill, " and to his heirs and assigns forever," and added, " provided always and my will is, that the said Thomas shall

not sell or convey the estate hereby devised to him, within fifteen years after my decease, unless such sale shall be made to some one of my children; and in case my said son Thomas shall die without lawful issue, then and in such case the said real estate is hereby given and devised to Alexander Hill my grandson, the son of James Hill, and to his heirs and assigns forever, subject to the payment of one hundred dollars to Alexander Hill the son of Peter Hill, when of age, of one hundred dollars also to my grandson Alexander Hill the son of Whiteside Hill, when of age, and one hundred dollars to my grandson Alexander the son of Francis McLean, when he comes of age."

It is claimed by the defendant's counsel that the executory devise over to Alexander Hill was void on two grounds; 1. Because it is too remote, depending on an indefinite failure of issue; and 2dly, because it is repugnant to the absolute ownership and power of disposal given to Thomas Hill by the will.

I. Where a devise is limited on an indefinite failure of issue it is void because it may not vest within the compass of twenty-one years and nine months after a life or lives in being. (4 *Kent's Com.* 17, 271. 1 *Sid.* 451. 1 *Simons*, 173, 267. 11 *Wend.* 279.) An executory devise is not good, unless by the contingency upon which it depends, the estate must necessarily, by the terms employed, vest within the time prescribed. Previous to the adoption of the revised statutes, it had been well settled by a long series of judicial decisions in England and this country, that where an executory devise was made dependent on the first taker's dying without issue, it meant an indefinite failure of issue, and not a failure of issue living at the death of such prior devisee. It is unnecessary for me to review the cases, or to state the reasons upon which they rested. This has been very fully and satisfactorily done by Ch. J. Savage, in *Patterson* v. *Ellis*, (11 *Wend.* 259,) and by Chancellor Kent, (4 *Kent's Com.* 273.) In *Patterson* v. *Ellis*, the words were *without leaving lawful issue*. In *Doe* v. *Ellis*, (9 *East*, 382,) they were *without leaving issue*. The words in *Betts* v. *Gillespie*, (5 *Randolph*, 273,) were *without lawful issue*. These words, therefore, unexplained, had, previous to the

---

---

change in the law made by the revised statutes, a fixed and definite legal signification, and were to be understood as meaning an indefinite failure of issue.

It sometimes happened, however, that there were other provisions in the will, authorizing the inference that the testator intended a failure of issue living at the death of the first taker; in which case the executory devise is sustainable. In this case the plaintiff claims that there is such an explanation of the testator's intent, in the fact that the executory devise in question was made subject to the payment of three several sums of one hundred dollars each to three other grandsons when they should respectively become of age. It is contended that these legacies, being payable to persons then in being, the testator could not have contemplated a contingency that might have happened after the expiration of twenty-one years beyond lives then in being, but must have intended it to have occurred on the death of Thomas. There are many cases where the courts have seized hold of a peculiar expression to take the case out of the general rule and give effect to an executory devise. And there are several in which the testator's intent has been gathered from the character of the estate given over to the executory devisee, or the charges made upon it.

In *Roe* v. *Jeffrey*, (7 *T. R.* 592,) decided in 1798, the devise was to A. for life, and after her decease to the testator's daughter M. for life, and after her death to his grandson T., son of W., and to his heirs forever; but in case his said grandson should *depart this life and leave no issue,* then the property to return to E., M. and S., three daughters of W., and the survivor or survivors of them, to be equally divided between them share and share alike. The court held that this meant a failure of issue at the death of the first taker, and not an indefinite failure of issue; and one of the reasons given by Lord Kenyon for this decision was, "for the persons to whom it was given over were then in existence, and life estates only are given to them." This case was approved by Sir William Grant, master of the rolls, in *Barlow* v. *Salter*, (17 *Ves.* 479,) decided in 1810, who said "when nothing but a life estate is given over, the failure

of issue must necessarily be intended to be a failure within the compass of that life ;" though he held that the same rule did not apply where the entire estate is given over to four persons, though one taker was confined to a life estate, it being provided that after her death it should go to the survivors.

But the case of *Doe* v. *Webber*, (1 *Barn. & Ald.* 713,) decided in 1818, is still more like that under consideration.   There the testator devised to his niece, Mary Hiles, and then proceeded as follows:  " And my will is that in case my niece Mary Hiles, shall happen to die, and leave no child or children, then my will is, and I give, devise and bequeath unto my niece, Jane Barnes, all my freehold land and tenements, called or known by the name of Witheridge and south Huckham, to her and her heirs forever, paying the sum of one thousand pounds of lawful money of Great Britain, unto the executor or executors of my niece, Mary Hiles, or to such person as she by her last will and testament shall direct."   Lord Ellenborough, Ch. J., after holding that the words " leave no child or children," were equivalent to " dying without issue," said that the payment of the £1000 being a personal provision, and being made to a person or persons appointed by Mary Hiles in her will, the event contemplated by the testatrix was an approximate and not a remote event, namely, a failure of issue at Mary Hiles' death, and not an indefinite failure of issue which might happen at any remote period.

The reasons given by Lord Ellenborough apply as fully to the case before us as to the one last cited.   Here the legacies to which the executory devise is subject, were personal provisions for three of his grandsons then living, and by requiring payment to be made when they should severally become of age, it is evident the testator did not contemplate. a remote event. There is in truth, more reason for saying so in this case than in *Doe* v. *Webber*, where payment was not to be made to a person then living, but to the executors of a person then living. Here the persons to receive the payments were then living, and the payments were to be made at an early period of their lives, respectively.

Hill *v.* Hill.

I think therefore, it is clear from the explanation thus given by the testator, that he did not mean the words "dying without lawful issue" should be taken in their usual legal sense, but that he intended by them a failure of issue at the time of his death.

II. It is next contended that the executory devise is void because repugnant to the absolute ownership and power of disposal given to Thomas Hill by the will.

It is true a valid executory devise cannot subsist under an absolute power of disposition in the first taker. So in *Jackson* v. *Brewster*, (10 *John. Rep.* 19,) where B. by his last will, after devising a certain lot of land to his son Moses, his heirs and assigns forever, declared as follows : "In case my son Moses should die without lawful issue, the said property *he died possessed of*, I will to my son Y." &c. it was held the limitation over was void as being repugnant to the absolute ownership and power of disposal of the property given to Moses by the will. (*See also Jackson* v. *Delancy*, 13 *John. Rep.* 552 ; *Jackson* v. *Robbins*, 16 *Id.* 537 ; *Putnam* v. *Ellis*, 11 *Wendell's Rep.* 276 ; *Helmer* v. *Shoemaker*, 22 *Id.* 137 ; 4 *Kent's Com.* 270.) In all these cases of the giving to the first taker an absolute property, there was an attempt to give to the executory devisee such part of the property as should not be sold or disposed of by the first devisee. But the case before us is of a different character. To understand properly the estate devised to Thomas, all the parts of the devise must be considered together. It is true it commences by giving the property to him and his heirs forever ; but this expression is qualified by the subsequent limitation. (*Doe* v. *Ellis*, 9 *East*, 382.) And I have already shown, in deciding the first point, that Thomas took only an estate determinable on his dying without issue living at the time of his death. The condition on which this estate is given—that Thomas shall not sell or convey it within fifteen years after the death of the testator—does not enlarge the estate. The testator did not devise the estate to Thomas, his heirs, &c. absolutely, but on two express conditions; one, that he should not die without lawful issue, and the other that he should not

alien within fifteen years after the death of the testator, except to some one of the testator's children. The *jus disponendi* was not therefore *absolute*, but *conditional*. If Thomas sold to one of his brothers within the fifteen years, or to any other person after that time, the grantee in either case would take the land subject to the same contingency, that is, the death of Thomas without lawful issue; and upon the happening of that contingency, such grantee would be divested of the estate. I think therefore the second objection is not tenable.

III. Though not necessary to the decision of this cause, if I am right on both the first and second points, yet for greater caution, I proceed to consider the legal effect of the instrument executed by the parties on the 16th day of May, 1818. At that time Thomas Hill was in possession of the real estate in question, having entered under the devise to him in the will. His right to the possession at that time was not questioned, and could not be questioned under any construction of the language of the devise. The instrument in question was a quit-claim deed, by which Alexander the son of James granted, bargained, sold, released and quit-claimed to Thomas Hill, all the interest he took under the will, for the consideration of one hundred dollars. This conveyance was however made dependent upon two conditions subsequent; first, that Thomas Hill should pay the grantee the said sum of one hundred dollars, within four years from the date; and secondly, the further condition that if Thomas Hill should die without lawful issue, his personal representatives should pay to the legatees mentioned in the will the three several legacies of one hundred dollars each, "and cause the said Alexander, to be wholly exonerated therefrom according to the true intent and meaning of the aforesaid last will and testament." To this was added a covenant that if the said Thomas should die without lawful issue, and if this last condition should not be fully and completely performed within six months from his decease, it should be lawful for the grantee, his heirs and assigns, to enter upon the said premises, and have, hold and enjoy the same as his and their own. A further covenant provided, that if the said sum of one hundred.

Hill *v.* Hill.

dollars was not paid to the grantee, he might enter upon and hold said premises, till he should have received the said sum and interest out of the rents and profits. This instrument was signed and sealed by both the parties to it. It is claimed that this instrument operates as an estoppel, and precludes the defendants' questioning the plaintiff's title. Lord Coke divides estoppels into three kinds, viz. by matter of record, as by letters patent, fine, common recovery and pleading ; by matter in writing, as by deed indented ; and by matter *in pais,* as by livery, by entry, by acceptance of rent, and by partition. (*Co. Litt.* 352, *a.*)

The mere taking of a 'quit-claim deed would not have estopped Thomas Hill from questioning the title of his grantor. Thomas Hill did not enter under the quit-claim deed. He was already in possession, and had a right to protect himself against litigation by buying in claims made by others, without invalidating his legal rights, or subjecting himself to any allegiance to others. The rule is otherwise, as between vendor and vendee before conveyance, and between landlord and tenant. In both these cases the possession must first be surrendered before the title can be questioned. The rule is now well established that there is no estoppel except where the occupant is under an obligation, express or implied, to restore the possession at some time, or in some event. (*Jackson* v. *Spear,* 7 *Wend.* 401. *Jackson* v. *Leck,* 12 *Id.* 105. *Osterhout* v. *Shoemaker,* 3 *Hill,* 513.) The only exception to this rule has been that in ejectment for dower, the grantee of the husband was estopped from denying the grantor's title. (*Sherwood* v. *Vandenburgh,* 2 *Hill,* 303. *Bowne* v. *Potter,* 17 *Wend.* 164.) And even this exception has been recently overruled by the court of appeals, in *Sparrow* v. *Kingman,* (1 *Comstock's Rep.* 242.)

But Thomas Hill went beyond the mere taking of a deed. He covenanted that if the second condition subsequent was not performed within six months from his decease, his grantor, his heirs or assigns, might enter upon and hold and enjoy the premises. The plaintiff does not rest upon an estoppel *in pais,* but on an estoppel *by matter in writing, by deed indented.*

Hill *v.* Hill.

The parties have mutually adjusted their legal rights, by an indenture fully executed between them, and are mutually estopped from questioning it. Thomas Hill might perhaps have stood upon his title under the will, if he had not chosen to surrender it. Having covenanted to yield up the possession on a certain condition, he is as much bound to do so as if he had become the tenant of the executory devisee, by attorning to him, paying him rent, and agreeing to restore the possession at the end of the stipulated term.

It is said this covenant by Thomas Hill is without consideration, because the grantors had no legal interest in the premises. I have come to a different conclusion. But suppose the executory devise to be void. Yet under it Alexander made a claim to the premises. The validity of that claim depended upon a construction of the will, perhaps uncertain and difficult—certainly unsettled—between the parties. Thomas Hill had a right to settle that claim for himself. If nothing more, to buy his peace by avoiding a lawsuit ; and with as full a knowledge of his legal rights as the other party, he entered into the agreement before us. He agreed to pay, and did pay, one hundred dollars for the release in question, and agreed also to pay the three legacies of one hundred dollars each, to which the executory devise was subject, and as a further consideration covenanted that the executory devisee might take the possession if he failed to pay. The possession must follow the agreement. Where a party is estopped by a deed, all persons claiming under or through him are equally bound by the estoppel. (*Stow* v. *Wyse, 7 Conn. Rep.* 214.)

The defendant may perhaps be entitled to equitable relief, by showing some sufficient excuse for non-payment of the legacies at the time agreed upon, and by tendering performance of the condition. But in this suit we can regard only the strict legal right.

I think, therefore, the circuit judge erred in directing a nonsuit, and that a new trial should be granted ; costs to abide the event.

New trial granted.