## WILKLOW *vs.* LANE.

Ejectment will not lie, where the defendant claims and enjoys only an easement — a right to flow the land — subject to which easement the plaintiff has undisputed control and dominion over the land and may occupy it as he desires.

A lease, granting the privilege of turning a stream of water from its course, and using the same, executed long after the lessor has conveyed all his interest in the land, by warranty deed with full covenants, is absolutely void as against the grantee of the land, and those claiming under him ; and will not create the relation of landlord and tenant, as between a subsequent grantee of the land and an assignee of the lease.

Such a lease will not constitute or confer any title or right of possession ; otherwise than as the foundation of, or connected with, an adverse possession.

It is adverse to the title of the grantee of the land ; and by making it, the lessor asserts a right to the thing granted ; which assertion or claim will pass from him to the lessee, and thence to an assignee of the lease, and if accompanied by actual enjoyment, is as effectual, as an adverse claim on the part of the assignee, as though it embraced the entire estate in the land.

And if the grantee of the land, and those claiming under him, acquiesce in such adverse claim, or in an adverse possession originating prior to the execution of the lease, for more than twenty years, they will be barred by it.

In the absence of any request to the judge to submit any question to the jury, he has the right to substitute himself for the jury, and decide the case upon the evidence.

MOTION for a new trial, upon exceptions, in a cause tried before Justice GOULD, at the Ulster circuit in May, 1861, when the judge ordered a verdict for the defendant. The action was brought against the defendant to recover of

Wilklow *v.* Lane.

the defendant the possession of certain land covered by a mill pond. On the 21st day of April, 1821, John.W. Carpenter and wife conveyed to Eliphalet Smith, by a full covenant warranty deed, a farm described as containing 135 acres, and including within its boundaries the premises in question. Afterwards, and on the 30th of April, 1836, Eliphalet Smith and wife, by warranty deed, conveyed the same premises to Thomas Halstead. On the 30th of March, 1838, Thomas Halstead and wife, by warranty deed, conveyed the same to Jacob Steen. April 7, 1853, Jacob Steen, by warranty deed, conveyed the same to Anning Smith, and on the 2d of April, 1855, Anning Smith and wife, by warranty deed, conveyed the same to the plaintiff. John W. Carpenter, on the 7th day of March, 1826, and nearly five years after his conveyance of the premises by full covenant warranty deed, as aforesaid, to the plaintiff's grantor, executed to Nehemiah Merritt an instrument in writing in the following form:

"This indenture, made between John W. Carpenter, of the town of New Paltz, and Nehemiah Merritt, of the town of Poughkeepsie, that the first part doth release to the second part the privilege of turning the water from its course from the old saw-mill dam, to run the course turned whenever the second part sees fit to use it—running northerly on a water level to the north line, about six feet in width. The second part agrees to pay all damages done by the ditch; and the second doth agree to make a bridge across a ditch. For the consideration of the said Merritt's carding fifty weight of wool annually, and to be well done. For the performance we bind ourselves, administrators, executors and assigns for the term of fifty years, if wanted.

Dated the seventh day of March, 1826.

To which we have set our hands and seals.

JOHN CARPENTER. [L. S.]<br>NEHEMIAH MERRITT." [L. S.]

In the presence of Daniel W. Carpenter and Nathaniel Selleck.

On the 9th of May, 1836, Nehemiah Merritt and wife conveyed to the defendant a farm adjoining the plaintiff's land, on the north, and at the same time executed and delivered to the defendant an assignment of the above indenture or lease. About 37 or 38 years ago, Merritt kept the dam in repair, when Smith lived where the plaintiff now does. At the time the defendant purchased of Merritt there was a carding and fulling mill on the property sold by Merritt to him, which was burnt down, in March, 1859. The water was taken by Merritt when the defendant bought, and afterwards by the defendant, from the pond in question, through a ditch, on the water-wheel of such mill. Merritt, when he sold to the defendant, claimed the right to get water from the pond, through the ditch, and the ditch was not good for any thing without the pond. The defendant occupied and kept the dam and pond in repair. At the time the defendant took the assignment of the lease, he supposed it covered the dam and the mill pond; and he made repairs to the dam, during the period of his occupancy. Some time after he bought, he was told that his lease was not good; and he found out that it was given some years after his grantor had sold. He sometimes claimed a right to use the water and keep up and repair the dam, under and by virtue of the lease. On the 4th of February, 1861, and before that time, he disclaimed to hold under the lease; alleged that it was not good; that he did not claim under it, but claimed that he held and owned the land by twenty years' possession without payment of rent.

*M. Schoonmaker*, for the plaintiff.

*E. Cooke*, for the defendant.

*By the Court*, HOGEBOOM, J. I. It is doubtful whether the premises described were ever in the defendant's possession, in such an exclusive sense as made him liable to an

action of ejectment. He claimed and enjoyed only an ease-ment—a right to flow the land. Subject to this easement, the plaintiff had undisputed control and dominion over it, and might have occupied it as he desired. In such a case ejectment will not lie, and the judge might properly direct a verdict for the defendant. (*Redfield* v. *The Utica and Syra-cuse Rail Road Co.*, 25 *Barb.* 54.)

II. The pond was appurtenant to the defendant's mills, and was used and occupied as such ; and as such he could no more be deprived of it than of the mills themselves. With-out the pond, the mill would be valueless. (*Provost* v. *Calder*, 2 *Wend.* 522. *Pickering* v. *Staples*, 5 *Serg. & Rawle*, 107.)

III. The dam had been maintained by the defendant and his grantor, under a claim of right, for forty years. On this point there was no conflict of evidence, and nothing to sub-mit to the jury.

IV. It is true that the legal paper title to the premises in question was shown to be in the plaintiff, and that no out-standing or other title was pretended, or attempted to be proven ; except such as arose under the defense of adverse possession. It is true, also, the lease introduced in evidence did not constitute or confer any title or right of possession, otherwise than as the foundation of or connected with an ad-verse possession. Carpenter, the lessor, had, five years ante-rior to the date and execution of the lease, conveyed away to the plaintiff's grantor, by full covenant warranty deed, all his right, title and interest in the premises ; and that deed was recorded. The lessor had not then any interest in the premises, and could not confer any, by deed or lease. No reconveyance by Smith to Carpenter was shown, and it could not be conclusively presumed. And there is no evidence on which to base such presumption, except such as in its nature arises from the character of the act itself. It did not create the relation of landlord and tenant, as between the plaintiff and the defendant.

The lease having been executed long after the lessor had parted with all his interest in the property, by warranty deed with full covenants, it was absolutely void and of no effect as against the plaintiff and his grantors. The plaintiff did not recognize it. (*Jackson* v. *Burton*, 1 *Wend.* 341.) If any tenancy was created, this proceeding was not a proper way to terminate it. It possibly may have been put an end to by the repudiation of the plaintiff's right, and the claim of title by adverse possession, made on the part of the defendant, upon the demand made February 4, 1861.

But the evidence in regard to the lease did not tend to relieve the case of the feature of adverse enjoyment. (1.) The lease did not cover the pond, but only the ditch below it. (2.) The defendant, when he spoke of holding the water privilege under the lease, had reference to the ditch below the dam, and not to the pond. (3.) The possession did not commence under the lease, for Merritt was in the enjoyment of the privilege five years before the lease was given. (4.) The lease has forever remained a dead letter; the alteration therein stipulated for never having been made. (5.) The enjoyment was not in fact under the lease, but antecedent to it, and independent of it. (6.) The lease itself was adverse to the plaintiff's title. Carpenter made it five years after he had conveyed away the farm, and by making it he asserted a right to the thing granted; which assertion or claim passed from him to Merritt, and thence to the defendant, and being accompanied with actual enjoyment, is as effectual, as an adverse claim in his hands, as though it embraced the entire estate in the land. The legal inference or presumption growing out of this claim is, or might be, that Carpenter, after selling the farm, had reinvested himself with the water right, or privilege, and the plaintiff and his grantors, by acquiescing in the claim for thirty-five years, are barred by it. (7.) There is no privity, through the lease, between the plaintiff and the defendant. Taking the lease, therefore, was no acknowledgment, by the defendant, of title in the plaintiff; at least not

Wilklow *v.* Lane.

of any title which entitled the plaintiff to recover, or conceded the plaintiff's present right of exclusive possession. (8.) So no rent was reserved to the plaintiff. Neither could he re-enter for non-payment. Nor is this a proceeding to enforce re-entry for non-payment of rent.

V. The defendant did sufficiently make out a right or title by adverse possession. (1.) John W. Carpenter being the grantor of the plaintiff's grantor, by full covenant warranty deed, could not originate a possession adverse to the title under his deed. His deed covered not only the title and interest which he had at the date of the deed, but, also, any title which he might subsequently acquire. (*Jackson* v. *Reynolds,* 1 *Caines,* 444. *Jackson* v. *Scissam,* 3 *John.* 499. *Jackson* v. *Burton,* 1 *Wend.* 341. *Summers* v. *Skinner,* 3 *Pick.* 58. *White* v. *Patten,* 24 *id.* 324. 2 *Smith's Lead. Cas.* 458, *note. Bank of Utica* v. *Mersereau,* 3 *Barb. Ch.* 528.) (2.) But the defendant, although claiming under Carpenter, the grantor of the plaintiff's grantor, has a greater right to set up adverse possession than Carpenter had, and independently of him. His right originated as early as 1820, under Nehemiah Merritt. (*Jackson* v. *Harder,* 4 *John.* 203. *Jackson* v. *Bush,* 10 *id.* 223. *Moseley* v. *Moseley,* 15 *N. Y. Rep.* 334. *Hill* v. *Hill,* 4 *Barb.* 419. *Bank of Utica* v. *Mersereau,* 3 *Barb. Ch.* 528.) (3.) The character and claim of possession was such as to create an adverse possession which could ripen into a title, if the defendant had a right to set up adverse possession. The claim was in part adverse possession for a period of forty years, and in part possession under a fifty years' lease, during the entire time of his occupancy, until final demand anterior to the commencement of the suit. This, so far as the lease is concerned, is not a claim of the entire title. It contemplates and acknowledges the legal title in another, but to the extent of the rights under the lease, is as essentially a hostile claim, and as perfect an answer to the right to present possession, which is the foundation of an action of ejectment, as if the claim had been coextensive

Wilklow *v.* Lane.

with the entire title. To constitute an adverse possession there need not, necessarily, be an exclusive claim to the entire title ; nor one which necessarily excludes the idea of title in any other person, although it must be accompanied in this case by a notorious disclaimer of the plaintiff's title to so much as is embraced in the plaintiff's claim. (*Livingston* v. *Peru. Iron Co.,* 9 *Wendell,* 511, 517. *Jackson* v. *Johnson,* 5 *Cowen,* 74, 92. *Howard* v. *Howard,* 17 *Barb.* 663. *Hoyt* v. *Dillon,* 19 *id.* 644. *Vanderzee* v. *Vanderzee,* 30 *id.* 337. *Bradstreet* v. *Clarke,* 12 *Wend.* 602. *Osterhout* v. *Shoemaker,* 3 *Hill,* 513. *Averill* v. *Wilson,* 4 *Barb.* 180.)

The questions raised by the defendant in relation to the title or possession or character of the possession, under the evidence, or any presumption of release or conveyance, raised by the defendant upon the argument, were questions of fact which should have been submitted to the jury, and the judge would have erred in holding that there was no question of fact for the jury, if the evidence was in anywise doubtful or contradictory, and if the plaintiff had, as he did not, in terms requested to go to the jury. There being no request to the judge to submit any question to the jury, he had the right to substitute himself for the jury, and decide the case upon the evidence. (*Dows* v. *Rush,* 28 *Barb.* 157.)

The plaintiff is not entitled to a new trial, and it must be denied.

[ALBANY GENERAL TERM, March 3, 1862. *Gould, Hogeboom* and *Peckham,* Justices.]