STEPHEN D. CORAY, Respondent, *v.* JOSEPH H. MATTHEWSON, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1872.)

A contract for the sale of real estate provided that the vendor would procure a search of record showing title free of all encumbrances by the day appointed for delivery of the deed. The defendant went into possession under the contract, and afterward an abstract was furnished showing the title to be encumbered by a mortgage. After receipt of the abstract the vendee kept possession of the premises. *Held*, that the vendee might have rescinded upon receipt of the abstract, but in order to do so it was necessary to surrender possession; and that having retained possession and neglected to rescind, he could not avail himself of the breach of the covenant to deliver the search as a defence to an action for specific performance, if the vendor was able at the trial to make such a title as the vendee was entitled to under his contract.

Coray v. Matthewson.

The court will not compel a purchaser to take a title which is *prima facie*, defective, and which he may not be able to sustain in an action brought to annul it.

Nor is a contract to give a good title *of record* satisfied by a title that can only be established by a resort to evidence *aliunde* the record.

*Held*, accordingly, that a specific performance should not be decreed. it not appearing that the inchoate right of dower of the wife of one of the vendor's predecessors in title had been conveyed to A., under whom the vendor claimed, except by the statement of A. as a witness, that according to the best of her recollection the wife of the vendor's predecessor had joined in the deed to A., such deed being lost and not on record.

*Held*, also, that the fact of the vendee's having gone into possession under the contract, it not appearing whether before or after the discovery of the defect in the title, and having remained in possession and not rescinded after discovery of the defect, did not amount to a waiver by the vendee of the right to object on account of it.

A recital in a mortgage that the premises are the same this day conveyed by the mortgagee to the mortgagor estops the mortgagee, *it seems*, and his heirs from denying the conveyance of the premises.

On the 18th of March, 1870, the plaintiff and defendant entered into a contract, under their hands and seals, whereby the plaintiff covenanted and agreed to and with the defendant to sell and convey to him certain lands in the town of Almond, in the county of Allegany, containing about 315 acres of land, and to procure a search of record showing title free of all encumbrances by the 1st of May then next; and upon performance of the conditions in said contract to be performed by the defendant, he would convey said premises to him by a full covenant warrantee deed on said first day of May.

The defendant on his part covenanted and agreed to and with the said plaintiff to pay for said land the sum of $6,000 in eight equal annual payments, the first to be made on the 1st of April, 1871, and the remaining payments annually thereafter. He was also to pay all taxes and assessments thereafter imposed upon said land.

It was mutually agreed that the defendant should have possession on the 1st of April, 1870, and that he should keep the same in good repair, &c. That if defendant should fail to perform said contract the plaintiff might declare it void, retain

whatever might be paid upon it and all improvements, and might consider defendant as his tenant, holding over without permission, and take immediate possession and remove defendant therefrom.

On or about the 1st of May, 1870, the defendant went into possession of said premises, and was in possession thereof at the time of the trial of this cause.

About the 17th of October, 1870, the plaintiff presented to the defendant a search made by the clerk of Allegany county, by which it appeared that the premises in question were conveyed by Masterton, Ure and others to Paul Goddard by deed dated the 1st of July, 1847, and which was duly recorded 9th of January, 1852, in *liber* 34 of deeds, page 201, &c., in the clerk's office of said county.

In April, 1859, Paul Goddard and wife conveyed same premises to Edward J. Opp, which deed was duly recorded.

In March, 1860, Opp and wife conveyed to Charles L. Flint. This deed was duly recorded.

No deed is found upon record from Flint to any person; but there is found a mortgage from Sarah Arndt and her husband to said Flint upon the said premises, the consideration of which is stated to be $5,000. It is dated March 28th, 1861, and was duly recorded May 17th, 1861, in *liber* 23 of mortgages, page 172. It is stated in the mortgage that "the lands in this instrument described, being the same conveyed by said party of the second part to said Sarah Arndt by deed bearing even date herewith."

The search showed a mortgage given by the plaintiff and wife to Jesse B. Gibbs, bearing date January 21st, 1869, recorded January 27th, 1869, in *liber* 32 of mortgages, which was a subsisting lien on said premises.

This search was left with defendant for some time for the purpose of examination by counsel. It was finally returned with an objection to the title on account of the absence of evidence of any conveyance to Arndt, and also because of the last mentioned mortgage.

Plaintiff procured a satisfaction-piece of said mortgage and

Coray *v.* Matthewson.

annexed it to the search and left it with one Brown, giving defendant notice that he could examine it while in Brown's possession, but he could not take it away.

Before the commencement of this action plaintiff prepared and tendered a deed of said premises to the defendant, which he refused to accept and perform the contract on his part; and on the 20th of December, 1870, this action was commenced to compel the defendant to specifically perform said agreement, or to surrender possession and account for the rents and profits.

On the trial it was proved, on the part of the plaintiff, that the several grantees, named in the deeds mentioned in the search, entered and occupied under them from 1847 down. That as early as April or May, 1870, the defendant knew that the deed from Flint to Arndt was not recorded.

Mrs. Arndt was sworn and testified that she had seen the deed from Flint to her, that it was burned up some three to five years after she gave the mortgage. It was acknowledged, and was from Flint to her. She did not recollect whether Flint's wife signed the deed; the best of her recollection was she did.

The court below ordered judgment that the defendant specifically perform the contract on his part, and from that judgment defendant appeals.

*Hakes & Stevens,* for the respondent.

*Bemis & Near,* for the appellant.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. Upon the failure of the plaintiff to deliver a search, showing his title to the land free from encumbrance, the defendant might have rescinded the contract. In order to rescind, he must have surrendered the possession. (*More v. Smedburgh,* 8 Paige, 600.)

Neglecting to rescind and yet retaining the possession, he

cannot be permitted to insist upon the plaintiff's breach of
the covenant to deliver the search as a defence to his action
for specific performance, if the plaintiff was able at the trial
to make such a title to the premises as the defendant is
entitled to receive under the contract. (1 Hilliard on Vendors,
193, 321; 2 id., 279.) Nor could a purchaser, retaining
possession, successfully resist the payment of the purchase-
money. (*Wright* v. *Delafield*, 23 Barb., 498.)

Before proceeding to inquire whether the plaintiff has
shown such a title as the defendant is, under the circumstances
of the case, bound to receive, it is necessary to ascertain what
sort of title the defendant is entitled to under his contract,
and to what extent, if any, the contract has been controlled
or modified by the acts of the parties under it.

The search which plaintiff was to furnish was required to
show that the plaintiff's title was free from all encumbrance.

The parties must have intended by this provision that the
title should be free from all encumbrance, as the search could
not truthfully show the title unencumbered if it was not so
in fact.

The conveyance which plaintiff was, by his covenant, to
execute and deliver to the defendant was *a full covenant
warranty deed*. One of the covenants in such a deed is that
the premises conveyed are free from encumbrances.

When the contract between the parties is to sell land, and
there is no specification of the extent or nature of the title
that is to be conveyed, the vendor must convey a good unen-
cumbered title. (1 Hilliard on Vendors, 208, 209.) So a
covenant to give a good and sufficient deed of conveyance,
free of all encumbrances, binds the party to give a deed which
passes the title. If the vendor cannot make such a title, the
purchaser may recover back the purchase-money with interest.
(1 Hilliard, 209.)

The same author says, on page 210, that when one con-
tracts to purchase, on the faith of the vendor's having a good
title, he has a right to have the title sifted to the bottom
before he can be called on either to accept an indemnity or

compensation for a defect, or to abandon the contract, as equity will not compel a purchaser to take a doubtful title.

In Fry on Specific Performance (347), it is said, " When the vendor sues the purchaser for a specific performance of the contract, the defendant is entitled to have the plaintiff's bill dismissed, if it appears that the plaintiff cannot make out to the land a title free from reasonable doubt." (See also note [1] to same page; also note [2], page 349.)

At page 350, the same author says, " The court will never compel a purchaser to take a title when the point on which it depends is too doubtful to be settled without litigation, or when the purchase would expose him to such proceedings. The court will not compel him to buy a lawsuit."

Let us now inquire whether the title established by the plaintiff from the record by the recitals in the conveyances under which he acquired title, and by the parol proof given on the trial, has established such a title as the court should require the defendant to accept.

The defect in the title being the absence of a deed from Flint to Arndt, the failure to record that deed would be obviated, if its existence is legally proved, as, if shown to exist, it could be recorded, and thus the title of the plaintiff made complete on the record.

The defendant is by his contract entitled to a title of record, and if the evidence falls short of establishing such a title, the plaintiff is not bound to accept it, unless he has estopped himself from insisting on such a title.

Every person who has had anything to do with conveyancing must be aware of the importance to persons desiring to sell land, to be able to show a perfect title of record; such a title is not only the most satisfactory, but to those not acquainted with the law, the only one they will or can safely receive.

A title is very largely depreciated that can only be established by a resort to evidence *aliunde* the record.

The provision in the contract, for a perfect title on the

record, was a very important one to the defendant, and the court cannot altogether disregard it.

The law furnishes no means to establish the execution or contents of the deed from Flint to Arndt, except by perpetuating the evidence of the parties to that deed, to be used whenever litigation arises. A suit by the defendant may be indispensable. Even a suit will not perfect his title on the record.

The court below has held that conveyance to Mrs. Arndt was established conclusively by the evidence of Mrs. Arndt alone, while for aught appearing in the case, the rights of third persons may have intervened, and which may at some future day be asserted to the premises.

It is enough that there is nothing shown in this case, that the title in Mrs. Arndt was a legal unencumbered title.

It was proved that Flint had a wife, and the only evidence that she united in the deed is the uncertain and unreliable recollection of Mrs. A. as to an event occurring more than ten years before the trial. What was to prevent Mrs. Flint from asserting, should she survive her husband, her right of dower in said premises?

The court will not compel the defendant to take a title which is *prima facie* defective, and which he may not be able to sustain in an action brought to annul it.

It was held, in *Seymour* v. *Delancey* (Hopk., 436), that equity could not compel a purchaser to take a doubtful title. But the purchaser will not be relieved when there is only a bare possibility that the title may be affected by existing causes, provided the highest evidence of which the nature of the case admits, and amounting to a moral certainty, be given that no such causes exist. (*Schermerhorn* v. *Niblo*, 2 Bos., 161; *Miller* v. *Macomb*, 26 W., 229.) What protection would defendant have against Mrs. Flint, should she sue for dower? The judgment on this case would be of no avail against her; she is not a party to it, and yet the recollection of Mrs. A., that Mrs. Flint was a party to the deed to her, has been held sufficient evidence of a transfer of her title to bind her.

Coray *v.* Matthewson.

If such was not the effect of the evidence and of the judg-
ment founded on it, the defect in the title remains.

Mrs. F. was not a party to the foreclosure of the mortgage
given to Flint by Mrs. A., and she is not bound by the judg-
ment in that action.

The recital in Mrs. A.'s mortgage of the conveyance by
Flint to her may bird Flint.  He is bound also by the judg-
ment of foreclosure of that mortgage.  But the difficulty as to
his wife's title is not obviated by either.

The defendant ought not to be compelled to accept such a
title.

It only remains to inquire whether taking and retaining
possession by the defendant estops him from disputing the
plaintiff's title.

It has been repeatedly said that a purchaser who takes and
retains possession of lands under a contract of purchase is
estopped from alleging a defect in the vendor's title.  (1 Hil-
liard on Vendors, 21, 223; *Viele* v. *Troy, etc., R. R. Co.,* 20
N. Y., 184.)

But the proposition thus broadly stated is not supported by
any adjudged case that I have been able to find.

Possession will estop a purchaser from taking advantage of
the strict performance by the vendor of his covenant to convey
at the time specified in the contract, and from successfully
resisting the payment of the purchase-money.  (*Wright* v. *Del-
afield, supra;* 1 Hilliard on Vendors, 221; *Viele* v. *Troy, etc.,
R. R. Co, supra; Tompkins* v. *Hyatt,* 28 N. Y., 347; *Hill*
v. *Hill,* 4 Barb., 419; *Lewis* v. *McMillen,* 41 Barb., 420.)

And when he enters into possession under the contract,
knowing there is a slight defect in the vendor's title or a
slight encumbrance upon it, he will be held to have waived it.
1 Hilliard, 223, 224; *Ten Broeck* v. *Livingston,* 1 J. C. R.,
357; *Winne* v. *Reynolds,* 6 Paige, 407.)

But when the defect in the title is such as necessarily to
lessen the value of the property, it will not be held waived
except upon the most conclusive evidence that it was his
intention so to do.

This is the conclusion necessarily drawn from the opinion of the Master of the Rolls in *King* v. *King* (1 Mylne & Keen, 442).

The defendant, the purchaser, had been in possession for eight years, under a contract for the purchase of certain premises, to which the vendor could not make a good title, yet he had refused to surrender possession or to take such title as the vendor could give. The bill was filed by the latter to compel a surrender of contract or that defendant accept the title.

The Master of the Rolls directed the surrender of the agreement and an account for the rents and profits.

This case is substantially the same in principle as the one before us. Yet eight years' possession did not estop the defendant from insisting on the defect of title, and the relief granted fully protected the vendor and did no injustice to the purchaser.

In *Burroughs* v. *Oakley* (3 Swanst., 159) a purchaser was held entitled to an investigation of the title, notwithstanding possession taken, acts of ownership incident to possession, and preparation for a conveyance. (1 Hilliard on Vend., 227, 228.)

In *Minor* v. *Edwards* (12 Miss., 137) the agreement was to pay for the land, on the vendor making a clear title in fee simple. The deed delivered did convey in fee, but there was an encumbrance unknown to the purchaser. Held, the latter might waive his right to a deed in fee and accept a lesser interest; that whether there was such a waiver was a question for the court, and there must be unequivocal proof of it.

The most that can be claimed against a purchaser, by reason of taking and retaining possession of land under a contract of purchase, is that it is evidence of a waiver of objection to the title, but whether it shall estop him depends on the circumstances of the case.

In *Fox* v. *Burch* (1 Merivale, 105) the defendant went into possession of premises to which the vendor covenanted to make title by a day named and on the payment of the price to convey; the abstract showed a valid title. The bill prayed

Coray v. Matthewson.

specific performance or that defendant surrender possession and account for the rents, &c.

The answer admitted the agreement, claimed possession under a prior parol agreement, and that he took exceptions to title as disclosed in the abstract, and they had not been removed, and that he insisted on a performance by the plaintiff.

The Lord Chancellor said that although, in the ordinary case of a purchaser being let into possession, he must be taken to have waived or to have given reason to expect that he will waive objections to the title, yet there is another class of cases in which the purchaser gets into possession by the courtesy of the vendor, when it must depend on the particular circumstances of each case whether he shall be compelled to pay the purchase-money before the completion of the title. In the present case, it was not denied there was a degree of laches on the part of the vendor in making out his title, and on these grounds the motion was denied, and an order of reference ordered to inquire as to the title.

The court finds that the defendant knew as early as May or April of the defect in plaintiff's title.

This defect was not discovered until after the contract was completed by which the rights of the parties were fixed. It cannot be said that defendant purchased with knowledge of the defect, and he is not estopped on that ground from insisting on the defect.

It is not certain whether defendant went into possession with knowledge of the defect in the title. By the contract he was to have possession on the 1st April, 1870, but the finding is he entered on or about the 1st May, and that he had notice of the defect in April or May.

This finding is too uncertain to justify the court in giving any considerable importance to the notice.

Should the defendant succeed on the next trial of this cause, the judgment should contain a provision declaring the contract between the parties null and void, thus enabling the plaintiff to maintain ejectment for the land, and in such action

to recover the rents and profits for the time defendant has been in possession.

For these reasons, I am of opinion that the judgment of the Special Term should be reversed and a new trial granted, costs to abide the event.

JOHNSON, J., dissented.