MORE and others *vs.* SMEDBURGH and others.

Where by the terms of an executory agreement for the sale and purchase of lands, the vendee was entitled to the immediate possession of the property, the first payment for which was to be made in part by his obtaining an assignment of a judgment which a third person held against the vendor, after which the deed was to be given and the judgment cancelled, and the residue of the first instalment paid ; *Held*, that the vendor was entitled to a reasonable time after he had notice of objections to his title, to clear off the incumbrances and to procure the necessary certificate to show that the property was unincumbered ; also *Held*, that under the cir-

cumstances of the case, three weeks was not an unreasonable time for that purpose.

A greater degree of vigilance is required on the part of the vendor in perfecting the title to the purchaser, where the latter is not in possession of the property purchased, than is required from him where the vendee is in possession under the contract.

Where, in a contract for the sale of land, a day is fixed for the conveyance of the property, if the vendee wishes to object to the title he must give notice of his objections a reasonable time previous to the day fixed for making the conveyance, to enable the vendor to remove the objections to the title and to make the conveyance at the time specified, or a court of equity may consider a strict performance of the contract by a conveyance on the specified day, as waived. And where the vendor has not been guilty of gross negligence in perfecting his title, equity may decree a specific performance, upon a bill filed by him, although the title was not perfected on the specified day; unless the time of perfecting the title is by the terms of the contract made an essential part of the agreement.

Where the vendee has entered into possession of the premises under an executory agreement for the purchase of the same, if he wishes to rescind the contract, on the ground that the vendor has not perfected his title to the premises and executed a conveyance thereof within a reasonable time, or at the time specified in the agreement, he must give up the possession to the vendor; as he cannot elect to rescind the contract and still continue in possession of the premises under it.

Whether a contract for the sale of land, belonging to a copartnership, signed by one partner in behalf of himself and his copartner, can be enforced against the purchaser, who has also signed the contract, under the provisions of the revised statutes relative to such contracts; *Quære?*

THIS was an appeal from a decree of the vice chancellor of the fourth circuit, dismissing the complainants bill with costs. The bill was filed against W. F. Brackney in his life time, for the purpose of compelling the specific performance of a contract made by him for the purchase of a tannery and other lands connected therewith, in the county of Dela vare, in December, 1836. Smedburgh was made a party defendant, as the assignee of a judgment against the complainants, which had previously been purchased by Brackney, to be applied in part payment of the premises according to the terms of the contract with them ; and to restrain Smedburgh from proceeding to collect such judgment. The cause was heard upon pleadings and proofs before the vice chancellor. W. F .Brackney having died subsequent to the decree of dismissal of the bill, and pending this appeal, the cause was duly revived against his

January 25.

personal representative, and against those who had succeed-
ed to the equitable rights of his father in the premises as
heir at law ; the father having also died pending the ap-
peal and before the suit was revived.

*S. Stevens*, for the appellants.   The contract to convey
was obligatory and binding upon all the complainants.
(*Martin* v. *Mitchell*, 2 *Jac. & Walker*, 426, 427.)   The
defendants cannot now object that the contract was not
signed by all the complainants.   If the contract *had
only been signed by the vendee*, he having gone into posses-
sion, the court would decree a performance against him at
the suit of the vendors.   (*Idem.*)   Time was not " *of the
essence of this contract.*"   The principle to be extracted
from the authorities is, that two things are necessary to
make time of the essence of the contract.   *First.* There
must be a particular time specified in the contract for its
performance.   *Second.* The performance of the contract at
or by the time specified, must constitute the main, or an
important ingredient in, or inducement to, the purchase.

The agreement in question was made the 15th Decem-
ber, 1836, and no time is specified in which the complain-
ants were to execute the conveyance.   The complainants
tendered a full performance on their part within a reasona-
ble time.   The vendor is entitled to a reasonable time to
extinguish incumbrances.   (5 *Paige's Rep.* 410, 411.)
There has been no failure of performance on the part of
the vendors ; but if there had been, still a specific perform-
ance would be decreed ; as time was not made of the essence
of the contract.   Where the vendee is in possession, and
the vendor without any positive fault has omitted, or from
the state of the title has been unable to comply with his
covenant, still a specific performance will be decreed in
his favor, where time is not of the essence of the contract.
(*Craig* v. *Martin*, 3 *J. J. Marsh. Rep.* 54.   *Ramsay* v.
*Brailsford*, 2 *Dessausure*, 582.)   A specific performance
will be decreed against a vendee who has gone into posses-
sion, although the vendor has not performed or been able

to perform on his part, provided he is able to give a title at the time of the hearing. The judgment purchased by Smedburgh should be decreed to be satisfied of record, and the amount thereof applied in payment of so much of the price of the premises, according to the agreement. Smedburgh purchased the judgment with a full knowledge of all the facts.

*A. L. Jordan,* for the respondents. The contract was not mutually binding. It was not binding on the complainants Samuel Moore and Andrew Moore, because it was executed by Robert L. only without their assent. (*Martin* v. *Mitchel,* 2 *Jac. & Walk.* 426. *Lawrenson* v. *Butler,* 1 *Sch. & Lef.* 13.) The complainants failed to perform on their part. There was no precise day fixed by the contract on which it was to be fulfilled. It was in law, therefore, to be fulfilled within a reasonable time. The only uncertainty is, as to what was that reasonable time. It might be said unhesitatingly that two days was within reasonable time, and that two years was not within reasonable time, and yet the precise limit might not be settled without some difficulty. The rule adopted by the vice chancellor is as good a one as the mind can arrive at : " A reasonable time is such a period as would be required by persons of ordinary business talents and habits to accomplish the duties which the respective parties had to perform." Time was of the essence of the contract. Time may be made of the essence of the contract by express stipulation, as that the thing shall be performed on a particular day, and none other, or any other apt words, shewing the intention of the parties to that effect. Time is of the essence of the contract in all cases where it is, in any substantial degree, material to the rights and interest of the parties. Any less comprehensive definition would be absurd. Time was here material to the defendants' interests ; the property was unsaleable until he had a title. (*Lewis* v. *Lord Lechmere,* 10 *Mod.* 503. 2 *Eq. Cas. Ab.* 689. *Spurnier* v. *Hancock,* 4 *Ves.* 667. *Hannington* v. *Wheeler,* 4 *Ves.* 686.

1841.

More
v.
Smedburgh.

*Loyd* v. *Collett*, 4 *Bro. Ch. Cas.* 469. *Benedict* v. *Lynch*, 1 *J. C.* 374. *Waters* v. *Travis*, 9 *J. R.* 450. *Thompson* v. *Todd*, 1 *Peters*, 380. *Pratt* v. *Carroll*, 8 *Cranch*, 471.) The defendant could not enjoy the property without extensive repairs, and the time of year for making those repairs had passed by, after he demanded his deed, and before he finally rescinded the contract ; and during all that time the premises remained encumbered, greatly beyond their value, and there was no reasonable assurance that the complainants would fulfill for months to come. Time is always material, or becomes so, when either party chooses to make it so. When either party calls for fulfillment, the other is not at liberty to disregard the call ; if he does, the contract may be abandoned. Taking possession where, as in the present case, it was a part of the contract that the vendee should take immediate possession, proves nothing. This is according to the decision in *Ramsay* v. *Brailsford*, (2 *Dessaus.* 582.) And where the plaintiff has failed, and especially if any injury has accrued to the defendant, specific performance will not be decreed. In the present case the premises were dilapidated and could not be enjoyed at all without great expenditure in repairs, and that no man of prudence would have laid out, having no title, and the premises being encumbered to several times their value. (*Fonblanque, Book* 1, *ch.* 6, § 2, *last ed. p.* 282. *Guest* v. *Hornfray*, 5 *Ves.* 818.)

THE CHANCELLOR. I fully concur in the very able opinion of the vice chancellor, as to the impolicy of permitting the vendor, in an executory contract for the sale of lands, to insist upon a specific performance after the purchaser has actually relinquished the contract in consequence of the neglect of the former to comply with the conditions thereof on his part. But I think the circumstances of the present case were such as to take it out of the general principles laid down by him. The pleadings and proofs in this case, as well as the contract itself, show that the parties did not contemplate an immediate conveyance of

the property ; although as to the possession of the premises sold, and the stopping of the interest on the judgment, the contract was to take effect immediately. The purchase of the judgment of the Catskill Bank was undoubtedly to be made by Brackney without any unnecessary delay ; and such purchase was accordingly made by him about two weeks after the making of the contract with the complainants. The terms of the agreement, however, show that neither party contemplated the giving of a deed for the premises immediately after the judgment was obtained from the bank. For there was an express provision that after Brackney had purchased the judgment he should *hold it* until he obtained a conveyance from the complainants ; and then should cancel the same, and pay the balance of the first instalment of the purchase money. And that Brackney himself did not understand that the whole agreement was to be consummated as soon as the judgment of the Catskill Bank was procured by him, is evident from the fact that he did not perform the whole of his part of the agreement until the middle of September, 1837. He then, for the first time, caused the premises to be insured, according to the terms of the agreement apparently ; but probably for the express purpose of getting rid of the contract, by demanding an immediate execution thereof, when he knew the incumbrances could not be removed, and the evidence thereof procured for two or three weeks thereafter. Even where a day has been fixed by the contract for the execution of the deed, if the purchaser does not make his objections to the title in time to enable the vendor to remove them before the day fixed, equity may consider a strict performance at the day as waived. (*Jones* v. *Pice*, 3 *Anst.* 924.) And in such cases also, if the vendor has not been guilty of gross negligence, equity will assist him, although the title was not made at the day, unless by the terms of the agreement, the time of making the title was made an essential part of the agreement. (*Fordyce* v. *Ford*, 4 *Bro. C. C.* 494. *Radcliffe* v. *Warrington*, 13 *Ves. jun.* 323.) But in the present case, as

1841.

More
v.
Smedburgh.

1841.

More
v.
Smedburgh.

no time was fixed for the giving of the deed and the purchaser had asked for an extension of the time for the payment of the balance of the first instalment, which would become due immediately upon the execution of the deed, the complainants were entitled to a reasonable time after the application of Mr. Jordan, and his objection to the title on account of the outstanding incumbrances, to clear the premises and to produce the necessary certificates that such incumbrances were discharged, before the purchaser was authorized to repudiate the contract. And as the title was made perfect within three weeks from that time, which was not an unreasonable delay, I think the purchaser was bound, according to the settled principles of this court in similar cases, to go on and complete his purchase.

Again ; the purchaser, in case he elected to rescind the contract, was bound to give up the possession of the property which he had entered into the possession of under that agreement. And he was not at liberty to say to the vendors, after he had occupied the premises nine months without paying any thing therefor, " our contract is at an end, but I shall continue to occupy the tannery until I shall have no further use for it for tanning the hides I have now on hand." Here the answer insists upon a rescision of the contract before the complainants had cleared off the incumbrances and tendered the conveyance, on the 12th of October, 1837, and yet it is admitted, in the same answer, that Brackney the purchaser was in the occupation of the tannery when that answer was put in, on the 16th of January, 1838.

There is unquestionably a distinction in the rule of vigilance required on the part of the vendor where the purchaser has been kept out of the enjoyment of the property by the neglect of the former to proceed and complete the sale ; as it would be contrary to equity to compel the purchaser, who was not in possession of the estate which he had agreed to buy, to wait an unreasonable length of time for the vendor to make out a title. What, therefore,

would be a reasonable time in reference to a purchaser in possession, would not always be so as to one who was not.

As a general rule, if a vendor receives payment of a part of the purchase money after the time of payment fixed by the terms of the agreement has expired, or if the vendee continues in possession under the agreement long after the time specified therein for giving the deed, a court of equity may consider a strict performance at the day as waived. And the party who has thus waived a literal performance of the terms of the agreement, will not afterwards be permitted to insist upon a forfeiture, without notice to the other party and giving him a reasonable time to perform on his part. (*See Harris* v. *Troup and others, ante, p.* 423.) In the present case I am satisfied it would be inequitable to permit the purchaser to rescind the contract upon such slight grounds as are attempted to be set up in the defence, after having enjoyed the use of this valuable property so long for nothing ; and that a specific performance of the contract should have been decreed.

The objection that the contract was only signed by one of the complainants, in the name of the firm, cannot be sustained. Under the English statute of frauds it was only necessary that the agreement should be signed by the party against whom the same was sought to be enforced, to enable the other party to maintain a suit thereon either at law or in equity. (*See* 1 *Sugd. on Vend.* 160, 10*th Lond. ed., and cases there cited* ; *Laythoarp* v. *Bryant,* 2 *Bing. N. C.* 735 ; *Field* v. *Boland,* 1 *Drury & Walsh,* 37.) Whether an agreement signed by one partner in behalf of himself and his copartners would be a valid agreement as against the purchaser under our present statute of frauds, which requires the contract to be signed by the party *by whom the sale is to be made,* it is not necessary now to consider. For the delivery of the possession of the premises under the contract took the case out of the statute of frauds, even if the agreement had not been reduced to writing ; and

*1841.*

More
v.
Smedburgh.

brought the case within the exception contained in the 10th section of the statute. (2 *R. S.* 135.)

The decree appealed from must therefore be reversed, and there must be a decree for a specific performance against the present defendants, with costs. But the decree must be so drawn, that the administrator and heirs shall not be personally charged beyond the amount of property which has come to their hands by the decedent, and for which they are legally liable to the creditors in the due course of administration, under the provisions of the revised statutes. And if the premises are not paid for by the administrator and heirs, after applying the bank judgment in part payment of the purchase money according to the terms of the contract, the decree may authorize a sale of the premises to satisfy the amount remaining due, together with the costs.

Smedburgh having taken the assignment of the bank judgment with a full knowledge of the complainant's equitable right, under the contract, to have it cancelled and applied in part payment of the purchase money, he must be decreed to cancel the judgment. And he must be perpetually enjoined from proceeding to enforce the collection of the same, either in the name of the bank or otherwise; but the decree is to be without prejudice to any claim he may have against the estate of Brackney the assignor. As the expense of the litigation has not probably been increased by his joining with Brackney in the defence, and as he was originally a mere security for the latter, to the bank, I do not think it proper to charge him personally with the complainant's costs.

Decree accordingly.(<em>a</em>)

---

(*a*) Affirmed on appeal to the court for the correction of errors, December, 1841.