## J. WARREN TOMPKINS v. GEORGE E. L. HYATT and others.

It may now be regarded as the established law of this state, that where a purchaser takes possession of premises under an agreement to purchase, he can not rescind the contract without surrendering the possession; and that less diligence in perfecting the title is required of the owner when the purchaser is in possession than when he is not.

A delay, on the part of the vendor, or his heirs, to deliver the deed, for a period of ten years after the time fixed by the contract, furnishes no ground for a rescission of the contract by the vendee, so long as he continues in the undisturbed possession of the premises, under the contract.

And the vendee can not recover back the purchase money paid, so long as he retains the possession.

If a demand of a deed, upon a tender of the purchase money, on the day the contract was to have been performed, will put the heirs of the vendor in fault, the subsequent taking possession of the premises, by the vendee, and occupation of them, will amount to a waiver of that default, as long as the vendee's possession continues.

But if the heirs of the vendor, or a part of them, are infants, and therefore incapable in law, at the time, of complying with the demand, the only legal course which the vendee can take to enforce the liability cast upon the infant heirs by the contract of their ancestor and his death, is to apply to the court to compel them specifically to perform the contract.

Where, in an action brought by the vendee, against the heirs of the vendor, for a specific performance, the court made a decree adjudging that the contract ought to be carried into effect, and that it should be specifically performed by the heirs, by their executing a deed, upon the payment of the purchase money; *Held*, that the decree was a final order or decree which disposed of every question before the court, and absolutely concluded the parties, unless they appealed.

*Held, also*, that such decree should be regarded as a bar to a subsequent action brought by the assignee of the vendee, to rescind the contract of purchase; and that the court below erred, in the subsequent suit, in disregarding the previous decree and in adjudging, in direct opposition to it, that the vendor should recover back the purchase money he had paid, &c.

If a vendee takes possession of the premises, under the agreement, with knowledge of a defect in the title, he thereby waives all claim to relief on that ground.

He will also waive all claim to relief on account of such defect of title, by assenting to an order of the court directing a specific performance of the contract; and by his omission to appeal from such order.

Where a vendee has occupied the premises, and enjoyed the undisturbed use

of a water privilege, for a period of over twenty years, he will be held to have waived any right to damages on account of a defect in the title to the water.

APPEAL from the Supreme Court. The leading facts in the case are, that on the 8th of December, 1847, Joseph R. Hyatt made an agreement in writing with Columbus W. Seeley for the sale of four acres of land, with the buildings thereon, in Yorktown, Westchester county, for the sum of $5000, as follows: $3000 to be paid on the 1st day of April, 1848, and $2000 by "*suffering the premises to remain mortgaged as they now are to Seth Whitney for $2000."* Hyatt died on the 24th of March, 1848, leaving children, some of them infants, and the agreement unexecuted. George E. L. Hyatt administered, and presented his petition to the Supreme Court, on the 6th of April, 1848, for a specific performance of the agreement, with Seeley's consent indorsed thereon, that the prayer of the petition be granted. Regular proceedings were taken under this petition, and on the 6th of June, 1848, a final order was made authorizing a conveyance of the land according to the terms of the agreement, which order proved to be defective, as hereinafter stated. Seeley appeared before the referee, and upon the hearing, when the order was made. This order contained a provision that either of the parties might thereafter apply to the court for its aid to carry the order into effect. A deed was tendered to Seeley under this order, and refused. Seeley on the 1st of April, 1848, took possession of the land and principal dwelling house, and the family of Mr. Hyatt moved into an old tavern and storehouse on the premises, where they lived till the 20th of June, 1851, when they moved off and left Seeley in full possession, in which he continued till the sale under the judgment in this action. On the 6th of April, 1848, Seeley deposited in the New York Life Insurance Company $1500, which, with the interest at four per cent, was paid to George E. L. Hyatt on the 1st day of November, 1851, under an order of the Supreme Court, on account of the purchase

money, leaving the Whitney mortgage and fifteen hundred
dollars unpaid.   The order of the 6th of June was never
appealed from, and remained in full force when this action
was commenced.   A motion was made by Hyatt to compel
Seeley to perform.   Judge EDMONDS, on the 2d of October,
1848, directed a deed, with further covenants, to be tendered
to Seeley.   This was prepared and submitted to the plaintiff
in this suit, (who was at that time counsel for Seeley,) on
the 7th of October, by Mr. Stoughton, the counsel for Hyatt,
with a request that Mr. Tompkins would suggest any altera-
tions he might desire.   This was returned on the 23d day of
October, without any objection as to its form.   On the 16th
of November this deed was tendered to Seeley, who refused
it.   On the 20th of February, 1849, Judge EDMONDS made
an order that Seeley receive the deeds, or that an attachment
issue.   From this order Seeley appealed to the general term,
where the order was affirmed, and then to the Court of
Appeals, where it was reversed, upon grounds that had never
been suggested or claimed by Seeley as an excuse for declin-
ing the deeds.   (See *Hyatt* v. *Seeley*, 1 Kern. 52.)   No in-
terest having been paid on the Whitney mortgage since the
premises passed into Seeley's possession, it was foreclosed, and
the property was advertised to be sold under a decree in that
suit, on the 20th of June, 1851, on which day Seeley assigned
the contract of sale and all his interest in the premises to the
plaintiff.   The plaintiff then paid to the sheriff the judgment
on the Whitney mortgage, principal, interest and costs,
amounting to the sum of $2633.06.   No demand or request
was ever made by the plaintiff for a deed, but the defendants,
after the decision of the Court of Appeals, again tendered
Seeley a deed, having had no notice of the assignment to the
plaintiff.   The plaintiff then commenced this suit, setting
out as the foundation of his action the agreement of sale
between Hyatt and Seeley, which is recited in the complaint,
averring its binding force on the parties, and that Seeley had
tried to perform it, and praying, among other things, for a

specific performance of it. The answer admits the contract to be in full force; that the defendants have in good faith been making their best effort to have it performed, having been always ready and willing on their part to perform it since the order of June 6, 1848. The following facts, among others, were found at special term, viz: That such agreement was on the 8th of December, 1847, made and entered into between Joseph K. Hyatt and Columbus W. Seeley, as is set forth in the complaint. That the said lands have never been conveyed to the said Seeley nor to the plaintiff. That no sufficient deed in execution or fulfillment of the said agreement has ever been tendered to them, or either of them; that neither of them has waived a performance thereof, nor any right under the same, and that no proceedings had been instituted since the above mentioned judgment of the Court of Appeals, by the administrators and heirs of the deceased, or either of them, for the performance, in any court, on the 23d of June, 1857, (the time of the commencement of this action.) Thus finding the agreement to have been in full force and effect between the parties, when this suit was commenced.. Notwithstanding this finding, the decision at special term directed a judgment to be entered entirely disregarding the contract, and directing a sale of the premises under the judgment in. this case, and under the Whitney mortgage, and out of the proceeds to pay to the plaintiff, 1st, the costs and allowance in this suit and expenses of sale; 2d, the amount. due for principal, interest and costs on the 21st of June, 1851, on the Whitney judgment, and the interest thereon to the time of payment. These sums are to be paid in any event, (if the premises produce a sufficient amount,) without any deduction for the use and occupation by Seeley of the premises since April, 1848. 3d. If there be a surplus, that the sheriff pay to the plaintiff the sum of $1500 deposited in the trust company, with interest (that is, at seven per cent) from the 6th day of April, 1848, to the time when it shall be paid, after deducting therefrom the

amount which shall be found due for rent, use and occupation of the premises by Seeley or the plaintiff, to be established on a reference. This rent to be reduced by certain allowances, amounting to $500, for an icehouse and stone walls put on the premises by Seeley. The judgment entered upon this decision was affirmed by the general term, and the matters therein directed to be ascertained by a reference, were afterwards reported upon by the referee, and an order thereupon made distributing the balance of the purchase money. The premises were sold under the judgment, on the 24th day of May, 1859, for $5000, out of which sum were paid the costs and expenses of the sale and of the action, and the amount paid by the plaintiff upon the Whitney foreclosure, with interest, leaving a balance of $393.73, which was subsequently distributed in pursuance of an order made at special term, in September, 1860, as follows: $120 were paid for referee's fees in said accounting, and the residue paid to the plaintiff on account of the amount reported due him upon the accounting. After thus receiving the proceeds of the entire property, the plaintiff, according to the scheme of the judgment, is still unpaid the sum of $605.54 on his claims against these defendants. After the judgment of affirmance by the general term, and pending the reference as to the accounting, the defendants appealed to the Court of Appeals, giving the necessary security to stay the execution of the judgment. That appeal was dismissed by this court, for the reason that the judgment appealed from would not be a *final* judgment, until the coming in of the report of the referee thereby appointed to take the account. (Reported 19 N. Y. Rep. 534.) Application was then made to the Supreme Court by the defendants, in accordance with the suggestion of the Court of Appeals, to stay the distribution of the proceeds of the sale, until by the filing of the report the judgment should be made final and appealable. This application was denied, and the proceeds were paid as before stated. The defendants appealed.

*Samuel E. Lyon*, for the appellants.

*J. W. Tompkins*, respondent, in person.

ROSEKRANS, J.   The plaintiff should have been compelled specifically to perform the contract between Joseph R. Hyatt and Seeley, the plaintiff's assignor, instead of being allowed to recover the payments made upon and in pursuance of the contract, as if the contract had been rescinded.   The ground upon which the decision appealed from was made, relieving the purchaser and his assigns from the obligation to perform the contract, and allowing the plaintiff to recover such payments and the value of improvements made upon the premises by the purchaser, was the delay on the part of the heirs of the vendor to deliver a deed in fulfillment of the contract of their ancestor, for the period of nine years, the vendor having died a few days before the day fixed for the performance of the contract.   The perfect answer to this position is, that the purchaser, in pursuance of a stipulation in the contract, entered into possession of the premises contracted to be sold to him, on the day when the contract was to have been performed, and retained such possession until after the trial of this action, a period of over ten years, during which time he paid the taxes and insurance upon the premises, and made permanent and valuable improvements thereon, to the amount of over $1150.   And the plaintiff, as his assignee, paid the mortgage which the purchaser was to assume and pay as a part of the consideration of the purchase, and during that time neither the purchaser nor the plaintiff insisted upon a right to rescind the contract, either on the ground of any defect in the title to the premises or any delay in fulfilling the agreement.   Aside from any influence which the order of the Supreme Court of the date of June 6, 1848, decreeing that the contract should be specifically performed, can have upon the case, the plaintiff was not in a position to abandon the contract, under the circumstances above alluded to, nor was

the court authorized to declare it rescinded, under the findings of fact. It may now be regarded as the established law of this state, that where the purchaser takes possession of the bargained premises under the agreement, he can not rescind the contract without surrendering the possession; and that less diligence in perfecting the title is required of the owner when the purchaser is in possession than when he is not. In *More* v. *Smedburgh*, (8 Paige, 606,) it was decided that the purchaser, in case he elected to rescind the contract, was bound to give up the possession of the property which he had taken possession of under the agreement; and that he was not at liberty, after occupying the premises for nine months without paying any thing for their use, to say to the vendor, "Our contract is at an end, but I shall continue to occupy the premises until I shall have no further use for them." The Chancellor says: "Here the answer insists upon a rescission of the contract before the complainant had cleared off the incumbrances and tendered the deed, and yet it is admitted in the same answer that the purchaser was in the occupation of the premises when the answer was put in." Again he says: "As a general rule, if a vendor receives payment of a part of the purchase money after the time of payment fixed by the agreement has expired, or if the vendee continues in possession under the agreement long after the time specified therein for giving the deed, a court of equity may consider a strict performance at the day is waived." In that case a specific performance was denied, and the decree was affirmed in the Court of Errors by an equal division of the court. (26 Wend. 328.) On that occasion BRONSON, J. said that no adjudged cases could be found in which a contract was refused to be enforced when the purchaser had entered into possession of the bargained premises, and remained in possession at the filing of the bill for specific performance. In the case of *Stevenson* v. *Maxwell*, (2 N. Y. Rep. 415,) it was said by GARDINER, J., "Upon general principles I am

N. Y. R.—28.          23

inclined to think that whenever a vendee takes possession of premises as owner under a contract of sale of this description, he is bound to pay interest, whether the land is or is not productive, so long as his possession is undisturbed, and the vendor is not in default; and that the omission to execute a conveyance before demand, and an offer to pay the purchase money by the vendee, is not a default within the rule." I shall show, hereafter, that the tender of purchase money in this case and demand of a deed did not put the heirs of the vendor in fault, and that they were waived by the vendee. In the case of *Viele and others* v. *The Troy and Boston R. R. Co.*, (20 N. Y. Rep. 184,) the defendant was to take possession of land required for its track, and pay the damages to be determined by three appraisers, within ten days after notice of the appraisal, when the plaintiffs were to give a good and valid deed which should convey a title free from incumbrances. The award was made, and within thirteen days afterwards the plaintiffs tendered a deed, which was refused because the premises were incumbered. The incumbrances were satisfied within five days afterwards. Immediately after the award, the defendant's workmen commenced work upon the land, and the defendant continued in possession down to the time of the trial. COMSTOCK, J. said, "Some of the points which have been urged on the part of the defendants might be worthy of a serious consideration, if they had not taken possession of the land in question for the purposes of their road, and continued in occupation, so far as we know, to the present time. The defendants were not entitled to a nonsuit on the ground that an incumbrance existed against the land at the time a deed was tendered to them. The title, it is true, was to be clear of incumbrance, and if the defendants themselves acted upon the award by taking possession of the premises, it may be that they could resist a specific performance on the ground that the condition precedent was not strictly performed on the part of the plaintiffs. Such a question need not be examined. The incumbrance was satisfied

eight days after the deed was tendered; and although this was after the time when a clear title was to have been made according to the terms of the submission, yet the defendants, by their own conduct, lost the right of insisting upon such ground of defense. If they were not content with the title offered to them, they should have specified the objection, and given up the possession of the land." And a similar answer must be given to another objection prominently urged on the argument before us. "The defendants offered to show that the abitrators allowed to be proved, and took into consideration, one or more items not embraced in the submission, and which could not legally form any part of the sum to be paid to the plaintiffs as a compensation for their land. It appears that both parties attended and were heard before the arbitrators, and the fact is not found, nor is it pretended, that the defendants took and retained possession of the land in ignorance of the irregularities which they offered to prove. In such circumstances they can not reject the award, even if it could be otherwise impeached, for misconduct or excess of power. If they intended to deny the validity of the decision, they should have kept away from the premises, or proceeded in some other manner to acquire the title. They did neither of these things, and having taken and appropriated the land with no other right to it than such as they took under the submission and award, they are, on the plainest principles, estopped from interposing a defense of this nature." And GROVER, J. said, "The defendant having taken possession of the land, and continued such possession up to the trial of the cause, could not insist upon the failure of the plaintiff to tender a deed conveying to it an unincumbered title within the time limited by the agreement. Such failure constituted no defense to the agreement." In *Gale* v. *Nixon*, (6 Cowen, 445,) which was an action for the recovery of the purchase money, and the vendor had failed to deliver a deed within the time prescribed by the agreement, the vendor having taken possession pursuant to the terms of the agreement,

and retained it to the time of trial, it was held not to be
material that the deed was not tendered on the day fixed by
the contract. SUTHERLAND, J. said : "The defendants were
in possession of the land. They do not offer to deliver up
the possession and rescind the contract, but seek to retain
the land and avoid paying the stipulated price. This they
can not do. They must either avoid the contract in toto, or
else perform." In *Waters* v. *Travis,* (9 John. 467,) twelve
years had elapsed after the time fixed by the agreement for
the delivery of a deed, during which time the purchaser had
been in possession of the bargained premises. SPENCER, J.,
delivering the unanimous opinion of the Court of Errors,
said : "The lapse of time in a case like the present, where
no material inconvenience has been suffered by the appellant,
can be urged only on the ground that the agreement has lain
dormant, and that this is evidence of the abandonment of
it by the parties. Here has been a continued possession on
the part of the respondent from the period of the agreement
to this time, not as tenant liable to rent, but as holding under
the agreement. The continuance of the possession by the
tacit consent of the appellant was a constant and continued
affirmance on the part of the appellant, that the holding was
under the agreement. This is irresistible evidence that the
agreement was not abandoned by the parties, and their con-
duct was such as to leave no doubt that they both looked to
the future performance of it. The fair and natural interpre-
tation of the act of possession is, that it was because this
agreement had been entered into and was expected by both
parties to be performed." These authorities are sufficient to
show that the delay, on the part of the vendor or his heirs,
to deliver the deed for a period of ten years after the time
fixed by the contract, furnished no ground for a rescinding
of the contract by the vendee so long as he continued in the
undisturbed possession of the premises under the contract ;
and that the vendee could not recover the purchase money
paid, so long as he retained the possession. If the demand

of a deed, upon a tender of the purchase money, on the day the contract was to have been performed, put the heirs of the vendor in default, the subsequent taking possession of the premises by the vendee and occupation of them, amounts to a waiver of that default, as long as the vendee's possession continues. But the demand did not put the heirs of the vendor in fault. It was made of parties who were incapable in law, at the time, of complying with the demand. Two of the heirs of the vendor were then infants. They could not alien the lands. They could neither assent or dissent to the demand. The only legal course which the vendee could take to enforce the liability cast upon these infants by the contract of their ancestor and his death, was to apply to the court to compel them specifically to perform the contract. (2 R. S. 5th ed. 275, §§ 97 and 99.) The adult heirs were not put in default by the demand. Two of them were not present when the demand was made. Those who were present proposed to prepare a deed in a few weeks, and this was assented to by the vendee. All of the adult heirs subsequently offered to comply with the demand by tendering a deed in pursuance of the order of the court, bearing date the 6th of June, 1848, which was obtained upon the joint application of the adult heirs and the vendee. The deed, with the covenants of the adult heirs, was certainly unobjectionable, so far as related to the interest which had descended to them. But if these views are not correct, the taking and continuing in possession of the bargained premises after the demand was made, within the authorities referred to, was a waiver of any default by reason of the demand not being complied with.

I am also of the opinion that the order of the 6th of June, 1848, should be regarded as a bar to the plaintiff's action. It is an adjudication in relation to the subject of this action made in a proceeding to which the vendee was a party. As was held by this court in the case of *Hyatt* v. *Seeley*, (1 Kern. 52,) it was a final order which disposed of every question before the court and absolutely concluded the

parties, unless they appealed. It adjudged that the contract ought to be carried into effect, and that it should be specifically performed. It decreed that nine of the eleven heirs of the vendor should execute and deliver a conveyance of all their interest in the bargained premises, and that upon receiving that deed the vendee should pay the sum of $3000, and assume the payment of the Whitney mortgage and interest; provided that either of the parties to the proceeding might apply to the court for its aid to carry that order into effect. Assuming that the conveyance, directed by the order to be given, would not convey a perfect title to the bargained premises to the vendee, still the order was valid so far as it adjudged that a specific performance should be decreed, and as to the direction that some of the heirs of the vendor should convey, and as to its final provision authorizing either of the parties to the proceeding to apply to the court for its aid to carry the order into effect. That provision was sufficient to enable the vendee to obtain the interest in the premises of the two remaining heirs of the vendor. The omission of their names was doubtless a clerical error, which would have been corrected upon motion. The defendants rely upon this order in their answer as being still in force, and it is found by the court to have been made. It has never been appealed from. The decision of the court, in relation to the subsequent proceedings taken to enforce the order of the 6th of June, 1848, do not affect that order. The parties should have proceeded upon and under that order to effect the specific performance of the agreement. The rights of all parties could have been protected by such proceedings.

The court erred, in the case under consideration, in disregarding the order of the 6th of June and adjudging in direct opposition to it, that the agreement should be rescinded and that the plaintiff should recover the purchase money paid upon it and the money paid on the Whitney mortgage, which the order adjudged that the vendee should assume and pay.

The plaintiff alleges in his complaint that at the time he

made the purchase the premises were supplied with water, by conducting the same from a spring on the lands of an adjoining owner. That the vendee believed Hyatt had a legal right to the water of the spring and to conduct it as it was then conducted; that this privilege was of great value to the premises, but that after Hyatt's death he had discovered that Hyatt had only a verbal license thus to use the water, which could at any time be revoked, and he asks damages to the amount of $500 for failure of title to the water. The defendants denied the allegation that the water privilege was of great value to the premises, and no evidence was given on that point, nor is there any finding in relation to it. From the facts appearing in the case and the allegations in the pleadings, neither the plaintiff nor Seeley were entitled to any relief on the ground of want of title in Hyatt to the water, and the pipes by which it was conducted. For aught that appears in the complaint, Seeley knew of the defect of title before he took possession of the premises under the agreement. It is alleged that he made the discovery of Hyatt's want of title after the death of Hyatt, which occurred a week before the time for fulfilling the contract and the day Seeley took possession. Seeley did not testify where he acquired his knowledge of this defect of title. He made the same omission in his affidavit to obtain a rehearing of the order, which was finally reversed by this court. The inference is fair, from these circumstances, that he had such knowledge on the day the contract was to have been fulfilled; and if so, he waived all claim to relief on that ground, by taking possession of the premises. He also waived it by assenting to the order of the 6th of June, and by his omission to appeal from that order. It may be that the court, at an earlier day, would have relieved the vendee upon satisfactory evidence that he was mistaken in the effect of that order, and that the loss or danger of loss of the water privilege materially affected the value of the premises. But after so long a delay, during which time the vendee occupied

the premises, and for aught that appears enjoyed the undis‑ turbed use of the water as it was accustomed to run since 1838, a period of over twenty years, the vendee and the plaintiff should be held to have waived any right to dam‑ ages on account of the defect of title to the water.

The judgment in this case should be reversed, the parties should be restored to the condition which they occupied when this action was commenced, and the plaintiff should be directed to take proceedings under the order of the 6th of June, 1848, to perfect his title to the premises.

Wright, Davies and Balcom, JJ. concurred.

Selden and Emott, JJ. were for affirming the judgment. Marvin, J. was in doubt.

Judgment reversed.