SAMUEL SCHIFFER, Respondent, *v.* JOHN G. DIETZ, Appellant.

A vendee, entitled to rescind a sale for fraud, must act promptly on discovery of the fraud, and restore or offer to restore the property. By dealing with it as owner after such discovery he deprives himself of this remedy.

Where fraud upon the part of the vendor is claimed on the sale of real estate, a continuance in possession by the vendee after discovery of the fraud is evidence of an intent to abide by the contract.

Defendant, in execution of a contract to convey certain premises to plaintiff by deed, with warranty free and clear from all incumbrances, executed a conveyance May 10, 1872. At the time of the execution of the contract and of the delivery of the deed, defendant was married but his marriage was kept secret; defendant then supposed it to be invalid. Plaintiff had no knowledge of it until the fall of 1873, and defendant knew that plaintiff believed him to be unmarried. In an action to rescind the sale and conveyance, *held,* that defendant's belief in the invalidity of the marriage did not justify his omission to disclose the fact to plaintiff, as if void, or if it could be annulled, the fact of the formal marriage would be a cloud on title; that, therefore, a finding of fraud was justified, and on the discovery thereof plaintiff was entitled to demand a rescission.

Plaintiff retained possession up to the time of the trial in September, 1877, and leased the premises, receiving the rents. At the time plaintiff discovered the defect in his title, he was advised that a suit brought by defendant for a divorce was pending. Plaintiff thereafter paid interest on mortgages given by him on the sale on defendant's assurance that the title would be fixed before the next interest became due. He also conveyed undivided interests in the premises to parties who had become jointly interested in the purchase. In the divorce suit both parties were found guilty of adultery and the complaint was dismissed. In December, 1874, for the purpose of testing the right of defendant's wife to claim dower, the plaintiff contracted to sell a portion of the premises; the contractor refused to take title on the ground of the outstanding dower right; upon an agreed case the question was presented and submitted to the court, and it was finally determined that the judgment in the divorce suit did not bar the dower right. (64 N. Y. 47.) In April, 1876, the interests so conveyed by plaintiff were reconveyed to him, and he thereupon tendered to defendant a reconveyance demanding a return of the purchase-money, defendant in reply promised to perfect the title. Immediately thereupon plaintiff commenced this action. Defendant thereafter procured and tendered a deed executed by his wife releasing her dower in the premises. *Held,* that assuming that in consequence of defendant's promises to perfect the title, the right to rescind was held in abeyance, notwithstanding plaintiff's acts as owner, plaintiff was

bound, before bringing suit, to fix a reasonable time for perfecting the title giving defendant notice; and as it appeared that there had been no change in the value of the property after the commencement of the action, the tender of title was in equity a good answer to the claim for rescission.

(Argued December 21, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made July 1, 1879, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Charles Jones* for appellant.  Unless a party promptly disaffirms a contract on the discovery of the fraud, he will be deemed to have waived the fraud, and to have elected to abide by the contract. (*Wheaton* v. *Baker*, 14 Barb. 594; *Bruce* v. *Davenport*, 3 Keyes, 374; *Lamerson* v. *Marvin*, 8 Barb. 9; *Hunt, Adm'r,* v. *Singer*, 1 Daly, 209; *Benedict* v. *Nat. Bk. of Commonwealth*, 4 id. 171; *Masson* v. *Bovet*, 1 Denio, 69.) When time is once waived by the vendee or has ceased to be of the essence of the contract, the vendee must, in order to put the vendor in default, fix a day for completion at a reasonable time in the future and give the vendor notice. (*Myers, Ex'r,* v. *De Mier*, 52 N. Y. 647; *S. C.*, 4 Daly, 343; *Wiswall* v. *McGowan*, Hoffman Ch. 125, 139; *Harris* v. *Troup*, 8 Paige, 423; *Voorhis* v. *De Meyer*, 2 Barb. 37; *Richmond* v. *Foote*, 3 Lans. 244; Sugden on Vendors, 265.) If a purchaser, having a right to rescind upon the ground of fraudulent representations, continues to deal with the subject of the sale as owner after he is aware of the fraud, he will be held to have waived the right of action and cannot recover the purchase-money. (Sugden on Vendors, 335; *Campbell* v. *Fleming*, 1 Ad. & El. 40; *Moore* v. *Smedbury*, 8 Paige, 600; *Gale* v. *Nixon*, 6 Cow. 445; *Waters* v. *Train*, 9 Johns. 450.) The deed tendered to plaintiff before the contract was rescinded cured the defect in

the title, and by it the contract was completely performed. (*Voorhies* v. *De Meyer*, 2 Barb. 37; *Gale* v. *Nixon*, 6 Cow. 445; *Bebee* v. *Dowd*, 22 Barb. 255; *Tompkins* v. *Hyatt*, 28 N. Y. 347; *Coray* v. *Mathewson*, 7 Lans. 80; *Clanton* v. *Burgess*, 2 Dev. Ch. 13; *Davidson* v. *Moss*, 5 How. [Miss.] 673.) In order to rescind a contract on the ground of fraud, there must not only be a disaffirmance of it at the earliest practicable moment but there must be a return of all that has been received under it, and a restoration of the other party to the position in which he stood before the contract was made. (*Cobb* v. *Hatfield*, 46 N. Y. 533; *Masson* v. *Bovet*, 1 Denio, 69; *Sinclair* v. *Neill*, 1 Hun, 80; *Bedell* v. *Bedell*, 3 id. 580; *Lewis* v. *McMillan*, 41 Barb. 420; *Fisher* v. *Fredenhall*, 21 id. 28.) Evidence tending to show that defendant did not suppose or believe that he was legally married, or that Harriet Dietz was his lawful wife, was admissible as bearing upon his motive or intent, and as tending to show that his omission to state that he had a wife was not from any intent to deceive the plaintiff. (*McKown* v. *Hunter*, 30 N. Y. 625; *Kerrains* v. *The People*, 60 id. 221; *Filkins* v. *The People*, 69 id. 101.)

*Lucien Birdseye* for respondent. The inchoate right of dower of Harriet, wife of defendant Dietz, was an incumbrance on the premises, which constituted a breach of the covenants as to title. (*Schiffer* v. *Prudden*, 7 J. & S. 167; affirmed, 64 N. Y. 47; *Hembling* v. *Ismay*, 3 J. & S. 35; *McCool* v. *Jacobus*, 7 Robt. 115.) The fraudulent suppression and concealment of a material fact necessary to be known in the transfer of the property was such a fraud on the part of Dietz as the law will punish by giving to the vendee the right to rescind the contract, and to be restored to all the loss by it. (*Wheelock* v. *Wheeler*, 34 Vt. 533; *Mason* v. *Crosby*, 1 Wood. & Min. 342; *Smith* v. *Babcock*, 2 id. 246; *Tapp* v. *Lee*, 3 Bos. & P. 371; *Central Railway Co. of Venezuela* v. *Kisch*, L. R., 2 App. Cas. 114; *Oakes* v. *Turquand*, id. 326; *Rawdon* v. *Blatchford*, 1 Sandf. Ch. 344; *Tregg* v. *Reid*, 5 Humph. 529; *Scott* v. *Bamer*, 2 Lans.

557; *Smith* v. *Click*, 4 Humph. 186; *Prentiss* v. *Russ*, 16 Me. 30; *Pulsford* v. *Richards*, 17 Beav. 98; *Pusey* v. *Desbouverie*, 3 P. Wms. 315; *Bowles* v. *Stewart*, 1 Sch. & Lef. 249; *Brydges* v. *Branfil*, 12 Sim. 384; *Willis* v. *Willis*, 17 id 218; *Railton* v. *Matthews*, 10 Cl. & Fin. 934; *Farnam* v. *Brooks*, 9 Pick. 212; *Davidson* v. *Moss*, 4 How. [Miss.] 673; *Smolson* v. *Franklin*, 6 Munf. 210; *Laidlaw* v. *Organ*, 6 Wheat. 178; *Matthews* v. *Bliss*, 22 Pick. 48; *Kintzing* v. *Herran*, 8° B. Monr. 162; *Bowman* v. *Bates*, 2 Bibb, 47; *Arnot* v. *Biscoe*, 1 Ves. Sr. 95; *Martin* v. *Morgan*, 1 Brod. & Bing. 298 [5 E. C. L. 87]; *Turner* v. *Harvey*, 1 Jac. 169; 178; *Dolman* v. *Nokes*, 22 Beav. 402; *Davis* v. *Cooper*, 5 M. & C. 270; *Blake* v. *Mowatt*, 21 Beav. 603; *Cannock* v. *Chauncey*, 27 L. J. Ch. 57; *Ellard* v. *Llandaff*, 1 Ba. & Be. 241; *Jones* v. *Keene*, 2 M. & Rob. 349; *Walters* v. *Morgan*, 3 D., F. & J. 724; *Morgar* v. *Evans*, 3 Cl. & Fin. 205; *Burke* v. *Prior*, 15 Ir. Ch. 106; *Hill* v. *Gray*, 1 Starkie, 434 [2 E. C. L. 459]; *Mellish* v. *Motteux*, Peake, 156; *Smith* v. *Harrison*, 26 L. J. Ch. 412; *Edwards* v. *M'Cleary*, 2 Sw. 287; *Flight* v. *Barton*, 3 M. & K. 282; *Burnell* v. *Brown*, 1 J. & W. 172; *Gibson* v. *Spurrier*, Peak's Add. C. 50; *Seaman* v. *Vandrey*, 16 Ves. 390; *Prout* v. *Roberts*, 32 Ala. 427; *Halbert* v. *Grant*, 4 Mon. 580; *Ingraham* v. *Morgan*, 4 Humph. 66; *Steele* v. *Kniple*, 3 Ala. 353; *Carr* v. *Calahan*, 3 Litt. 216; *Kennedy* v. *Johnson*, 2 Bibb; *Campbell* v. *Whittingham*, 5 J. J. Marsh. 96; *Pollard* v. *Rogers*, 4 Call. 239; *Smolson* v. *Franklin*, 6 Munf. 210; *Davidson* v. *Moss*, 3 How. [Miss.] 673; *Turner* v. *Harvey*, 1 Jacob, 169; *Clark* v. *Baird*, 9 N. Y. 183, 196; *Durell* v. *Haley*, 1 Paige, 492; *Story* v. *Norwich & C. R. R. Co.*, 24 Conn. 94; *True* v. *Thomas*, 16 Me. 36; *Peter* v. *Wright*, 6 Ind. 183; *Smith* v. *Click*, 4 Humph. 186; *Keller* v. *Equitable Fire Ins. Co.*, 28 Ind. 170; *Turner* v. *Johnson*, 2 Cranch, 287; *Jenkins* v. *Simpson*, 14 Me. 364; *McAdams* v. *Oates*, 24 Mo. 223; *Hill* v. *Gray*, 1 Starkie, 434 [2 E. C. L. 459.) The vendor of land is responsible for material misrepresentations in respect to its location and qualities, made by his agent, without ex-

press authority, and in the absence of any actual knowledge by either the agent or the principal, whether the representations were true or false. (*Bennett* v. *Judson*, 21 N. Y. 238; *Elwell* v. *Chamberlain*, 31 id. 611, 619–620; *Hunter* v. *Hudson River I. & Mo. Co.*, 20 Barb. 493, 505–507; *New Brunswick, etc., Co.* v. *Conybeare*, 9 H. L. 711; *Western Bank of Scotland* v. *Addie*, L. R., 1 Sc. App. Cas. 159; *Oakes* v. *Turquand*, L. R., 2 App. Cas. 325; *Fitzimmons* v. *Joslin*, 21 Vt. 129; *Crocker* v. *Lewis*, 3 Sumner, 8; *Veazie* v. *Williams*, 8 How. [U. S.] 124; *Bowers* v. *Johnson*, 10 Sm. & Mar. 169; *Hunt* v. *Moore*, 2 Barr, 105; *Franklyn* v. *Elzell*, 1 Sneed, 497; *Udell* v. *Atherton*, 7 H. & N. 184; *Ex parte Ginger*, 5 Irish Ch. 174; *Barwick* v. *English J. S. B'k*, L. R., 2 Exch. 265; *Archbold* v. *Lord Houth*, L. R., 2 Irish Ch. L. 608; *Solomon* v. *Honeywood*, 12 Wend. 572; *Bristow* v. *Whitmore*, 9 H. L. 418; *Ex parte Ginger*, 5 Ir. Ch. 174; *Reynell* v. *Sprye*, 1 D., M. & G. 683; *Hough* v. *Richardson*, 3 Story, 689; *Henderson* v. *Railroad Co.*, 17 Tex. 560; *Crump* v. *U. S. Mining Co.*, 7 Gratt. 352; *Hunt* v. *Moore*, 2 Barr, 105; *Fitzimmons* v. *Joslin*, 21 Vt. 129; *Wheelton* v. *Hardisty*, 8 E. & B. 270; *National Ex. Co.* v. *Drew*, 2 Macq. 108, 144, 146; *Bartlett* v. *Salmon*, 6 D., M. & G. 39; *Barwick* v. *English J. S. Bk.*, L. R., 2 Exch. 262; *Bristow* v. *Whitmore*, 9 H. L. 418.) Plaintiff's right to rescind the contract was perfect when this suit was brought. (*Boyce* v. *Grundy*, 3 Peters, 210; *Davidson* v. *Moss*, 5 How. [Miss.] 673; *Hunt* v. *McConnel*, 1 Mon. 222; *Wycliffe* v. *Lee*, 6 B. Monr. 543; *Evans* v. *Bolling*, 5 Ala. 550; *Ayres* v. *Mitchell*, 3 Sm. & Mar. 683; *Woods* v. *North*, 6 Humph. 309 *English* v. *Banwood*, 25 Miss. 167; *Prout* v. *Roberts*, 32 Ala. 427; *Moreland* v. *Atchinson*, 19 Tex. 303; *Rawlins* v. *Wickham*, 3 D. & J. 322; *Bacon* v. *Bronson*, 7 Johns. Ch. 194; *Bean* v. *Herrick*, 12 Me. 262; *Pollard* v. *Rogers*, 4 Call, 239; *Campbell* v. *Whittingham*, 5 J. J. Marshall, 96; *Edwards* v. *M'Cleary*, Cooper, 308, 312; 2 Sw. 287; *Berry* v. *Armistead*, 2 Kean, 221; *Lovell* v. *Hicks*, 2 Y. & C. 46; *Pulsford* v. *Richards*, 17 Beav. 87, 96; *Bell's Case*, 22 id. 35; *Ayres'*

*Case*, 25 id. 515; *Slim* v. *Croucher*, 1 D., F. & J. 518; *Burrows* v. *Lock*, 10 Ves. 475; *Att'y-Gen.* v. *Cox*, 3 H. L. 240; *Ellis* v. *Coleman*, 25 Beav. 673; *Young* v. *Harris*, 3 Ala. 108; *Coffee* v. *Newsom*, 2 Kelly, 442; *Hoster* v. *Gersett*, 29 Ala. 393; *Garner* v. *Leorett*, 32 id. 410; *Gatling* v. *Newell*, 9 Ind. 372.) The tender by the plaintiff to the defendant, on April 25, 1876, of the deed carried with it a tender of the possession of the lands in question and was a sufficient transfer or offer to transfer the possession thereof. (*Young* v. *Harris*, 2 Ala. 108; *Coffee* v. *Newsom*, 2 Kelly, 442; *Hoster* v. *Gersett*, 29 Ala. 393; *Garner* v. *Leorett*, 32 id. 410.) Dietz's tender of a deed releasing his wife's dower, after the lapse of more than four and a half years from the time when the title should have been perfected, and of more than half a year after the commencement of this suit, was not a valid or sufficient one and cannot defeat the action. (*Gale* v. *Archer*, 42 Barb. 320.)

ANDREWS, J. This action was commenced on the 25th of April, 1876, to rescind a conveyance executed May 10, 1872, by the defendant to the plaintiff of certain lots in the city of New York, and to compel the defendant to restore $12,500 received by him from the plaintiff on the sale, and to cancel and surrender three bonds and mortgages amounting in the aggregate to $37,500, executed by the plaintiff to the defendant to secure the unpaid purchase-price of the land conveyed.

The conveyance sought to be rescinded was made in execution of a written contract of sale between the parties, made on the 8th of March, 1872, by which the defendant agreed to convey the premises described on the terms stated in the contract by a deed with covenants of warranty, free and clear from all incumbrances. The plaintiff's claim for relief is based upon the allegation that at the time of the execution of the contract and the delivery of the deed the defendant fraudulently suppressed the fact that he had a wife living, whose release of dower was necessary to convey to the plaintiff a perfect title.

In respect to the alleged fraud, it was shown that the defendant's first wife died in October, 1869. In Septem-

ber, 1871, he was married at Jersey City to his present wife, Harriet Dietz, at the house of the clergyman who performed the marriage ceremony, no witness being present except the clergyman's wife. The marriage was kept secret. The defendant provided for the support and maintenance of his wife after the marriage, but they resided at different places in the city of New York until June, 1872, and from the time of the marriage until that time they did not cohabit as man and wife. During this period the contract and conveyance in question was made. The plaintiff and defendant were friends, and during the life of the defendant's first wife had business transactions together. The plaintiff knew of the death of the defendant's first wife, soon after it occurred, but he had no knowledge of the subsequent marriage until the fall of 1873. The defendant stated to the plaintiff that he desired to go to Europe, and assigned this as the reason for wishing to sell the property. He did not inform the plaintiff that he had married again, and the plaintiff made no inquiry of the defendant upon the subject. The attorney of the plaintiff inquired of the defendant's broker, and was informed by him that the defendant was unmarried, and he made inquiries of persons whom he supposed would know, and received the same information. The death of the defendant's first wife was alluded to in conversations between the parties subsequent to her death. The defendant spoke of her loss and of his loneliness in consequence. The plaintiff testifies that the last conversation between them on this subject occurred about six months prior to the execution of the contract of March, 1872, a time anterior to the second marriage. The defendant was examined on the trial as a witness on his own behalf, and was asked by his counsel in respect to the circumstances under which he became acquainted with his present wife, whether he was informed by her or any other person that she was a married woman; what induced him to consent to the performance of the marriage ceremony, and whether when he entered into the contract with the plaintiff he supposed the said Harriet was his lawful wife. These questions were objected to

by the plaintiff's counsel, and the objections were sustained, and the defendant was not permitted to answer. He did state, however, without objection, that in omitting to state the fact of the second marriage he had no intention to deceive the plaintiff. The trial judge found as a fact that the defendant knew that the plaintiff believed him to be unmarried, and that in suppressing the fact of his marriage he was guilty of a willful fraud, but he further found "that from the time the defendant became convinced that there was a probability that he was legally married" up to the 6th day of November, 1876, he was constantly endeavoring to free the property from the dower right of his wife. This latter finding implies that the defendant, when he entered into the contract of March 8, 1872, supposed that the marriage with his present wife was for some reason invalid, but we concur in the conclusion of the trial court that this did not justify the defendant in omitting to disclose to the plaintiff that a marriage in form had been consummated, or relieve him from the charge of fraud. He knew that the plaintiff was dealing with him upon the assumption that he was unmarried. Even if the second marriage was void, or might for any reason have been annulled, he was in duty bound to disclose to the plaintiff the circumstances of the situation. If in fact the marriage was legal, the plaintiff could not acquire a perfect title to the land by a deed executed by the defendant alone, and if void, the fact of the formal marriage would be a cloud upon the title, and the defendant could not in justice cast upon the plaintiff the risk and burden of establishing its invalidity. We are, therefore, of opinion that the plaintiff was entitled, on discovery of the fraud, to demand a rescission of the sale and conveyance, and the restoration of the money and securities received by the defendant.

But a party entitled to rescind a contract for fraud may deprive himself of this remedy by acquiescence; or where the transaction is a sale of property, by his dealing with the property as owner after the discovery of the fraud. A party claiming to rescind a contract for fraud must act promptly on dis-

covery of the fraud, and restore, or offer to restore, to the other party what he has received under it. He cannot thereafter deal with the other party on the footing of an existing contract, or with the property acquired under it as his own. He has an election of legal remedies ; to sue for damages, or to be reinstated in the position in which he was before the contract was consummated. The remedies are not, however, concurrent, but are inconsistent, and the adoption of one necessarily excludes the other. So when he has made an election, he must abide by it. (*Masson* v. *Bovet,* 1 Den. 69 ; *Cobb* v. *Hatfield,* 46 N. Y. 533 ; *Lawrence* v. *Dale,* 3 Johns. Ch. 23 ; *Tanner* v. *Smith,* 10 Sim. 411 ; *Ayres* v. *Mitchell,* 3 S. & M. 693 ; *Vigers* v. *Pike,* 8 Cl. & Fin. 562.) In *Vigers* v. *Pike,* which was a bill filed, in one of its aspects to rescind a transaction in respect to mining lands on the ground of fraudulent representations as to incumbrances and the extent of minerals on the land, Lord COTTINGHAM said : "In a case dependent upon misrepresentation as to the nature and value of the thing purchased, the defendant cannot adduce more conclusive evidence, or raise a more effectual bar to the plaintiff's case, than by showing that the plaintiff was from the beginning cognizant of all the matters complained of, or after full information continued to deal with the property, and even to exhaust it in the enjoyment, as by working mines ; " and he further says : " The doctrine of carrying equities by acquiescence I consider to be one of the most important to be attended to." In conformity with the general doctrine that a party cannot rescind while retaining the fruits of the contract, it has been frequently decided that a purchaser of real property must surrender possession acquired under the contract, before he can maintain an action for its rescission (*Gale* v. *Nixon,* 6 Cow. 445 ; *More* v. *Smedburgh,* 8 Paige, 600 ; *Tompkins* v. *Hyatt,* 28 N. Y. 347) ; and where fraud is claimed, continuance in possession, after discovery of the fraud, is evidence of an intent to abide by the contract.

It is insisted by the counsel for the defendant that the facts proved and found bar the plaintiff from maintaining this action

for rescission upon the principles to which we have referred. It was found that the plaintiff, from the time of the conveyance, has had uninterrupted possession of the premises, and from the 19th of May, 1872, down to the time of trial, in September, 1877, has leased the land and received in rents an amount exceeding $2,000. In March, 1873, the defendant commenced an action against his wife for divorce, on the ground of adultery. The plaintiff was informed, in September following, of the existence of this suit, and then ascertained the defect in his title. In November of the same year the defendant called upon the plaintiff for payment of six months' interest due on the mortgages. The plaintiff then spoke to the defendant in respect to the defect in the title, and the defendant replied that he need not be afraid about that; that a woman was trying to blackmail him, and he would have it fixed before the next interest became due. The plaintiff then, or a few days after, paid the interest to November 1, 1873. About this time he was offered $25,000 for a part of the property, and he testified that he considered the rest worth $30,000. The consideration of his purchase was $50,000. The plaintiff, on the 8th day of December, 1873, conveyed an undivided three-eighths part of the land to one Raynor, and an undivided one-eighth part to one Morris, subject to the payment of proportionate parts of the mortgages executed by him to the defendant. The grantees in these conveyances had become jointly interested with the plaintiff in the purchase, and the conveyances were made to vest in them their respective interests, but they were not parties to the contract with the defendant, and, so far as appears, he had no knowledge that they were concerned in the purchase. The defendant's wife in her answer, in the divorce suit, set up recriminatory charges of adultery against her husband. The proofs were taken before a referee who found that both parties had been guilty of adultery, and in July, 1874, judgment was entered, dismissing the complaint, and granting no relief to either party. The plaintiff and his attorney were advised of the progress of the divorce suit, and it is clear, upon the evidence, that both of the parties to this action looked to a favora-

ble issue of that suit as a means of relieving the plaintiff's title from embarrassment. In December, 1874, after the termination of the divorce suit, the attorneys for the defendant entertaining the opinion that the finding and adjudication in that action that the defendant's wife was guilty of adultery was a bar to any claim on her part, of dower in the premises, although no divorce had been decreed, proposed to the plaintiff's attorneys that the plaintiff should enter into a contract to sell a part of the land, and on the purchaser refusing to take the title on the ground of the outstanding dower right of the defendant's wife, to present to the court, upon an agreed case, the question whether the judgment in the divorce suit barred her of her dower, the expenses of the litigation being borne by the defendant. This proposition was assented to by the plaintiff, and it resulted in the case of *Schiffer* v. *Pruden* (reported in this court in 64 N. Y. 47). The case as agreed set out a contract for the sale by the plaintiff to Pruden of a specific parcel of the land; that the premises were conveyed to Schiffer by Dietz, by the deed now in controversy; the marriage of the defendant to his present wife; the proceedings and judgment in the divorce suit; the claim on the one side that the conviction of the defendant's wife of adultery in that suit barred her dower, and an adverse claim on the other, and concluded by submitting that question to the court for its decision. The statement was signed by the parties, and each verified it to the effect that the controversy was real, and that the proceeding was taken in good faith to determine the rights of the parties. The final decision in this court was made January 25, 1876, adjudging that the judgment in the divorce suit did not bar the defendant's wife of her dower. On the 20th of April, 1876, the executors of Raynor and Morris reconveyed to the plaintiff the interests in the land conveyed by the plaintiff to their respective testators, and on the 25th day of April, 1876, nearly four years after the conveyance now sought to be rescinded, and two years and a half after the discovery of the fraud, the plaintiff tendered to the defendant a reconveyance of the land, and demanded that he execute satisfaction-pieces of

these mortgages and pay him $22,452.60, the amount of the purchase-money, taxes, etc., paid by the plaintiff, with interest thereon, giving no credit for the rent received. The defendant, in reply to the demand, said that he would perfect the title and see his lawyer on the subject. The plaintiff thereupon immediately served the summons and complaint in this action. After the suit was commenced, and on the 4th day of May, 1876, the plaintiff made a general assignment to one Jacobs of all his real and personal estate, for the benefit of creditors. While the suit was pending, and on the 6th day of November, 1876, the defendant tendered to the plaintiff a deed, in due form, executed and acknowledged by his wife, releasing her dower in the premises, and on the same day tendered a similar deed to the assignee, and a supplemental answer was served setting up the fact.

We are of opinion, upon the case presented, that the plaintiff was not entitled to judgment rescinding the conveyance and transaction in question. The evidence justifies the inference that the property embraced in the defendant's deed was purchased by the plaintiff with a view to a resale, and that this was understood by both parties. The plaintiff, when he discovered the fraud, had the right to demand a rescission of the contract, and if he had acted promptly, and the defendant had resisted a rescission, and meanwhile the property had depreciated in value, a court of equity would not afterward have compelled him to have accepted a good title, or at least not without awarding him compensation. But the plaintiff did not rescind the contract and was in no position to rescind it after his conveyances to Raynor and Morris in December, 1873, until the 20th of April, 1876. The evidence tends to show that, when he discovered the fraud, the property was advancing in value, and that, at that time, it was his interest to have the title perfected, and not to have the conveyance annulled. The defendant repeatedly promised to perfect the title or take back the property, and it is evident that from the time the question first arose between the parties they were co-operating in good faith for the purpose

of extricating the title from the embarrassment which attended it. But during the whole time the plaintiff dealt with the property as owner. In November, 1873, he paid interest on the mortgages. He conveyed to Raynor and Morris their portions under his agreement with them. He contracted to sell one of the lots to Pruden, and then joined with him in submitting the question of his title on an agreed case, and the plaintiff retained possession and received the rents of the premises down to the time of trial.

Assuming that by reason of the assurances of the defendant the right to rescind, notwithstanding these acts of affirmance, was held in abeyance, and might thereafter be exercised unless the defendant perfected the title, we are of opinion that in analogy to the rule in actions for specific performance, when performance at the time has been waived, or is not of the essence of the contract, the plaintiff was bound, before bringing his action, to fix a reasonable time in the future for perfecting the title, giving the defendant notice. (*Harris* v. *Troup*, 8 Paige, 423; *Myers* v. *DeMier*, 52 N. Y. 647.) And in accordance with the general rule, that it is sufficient that the party is able to make his title before decree, provided no change of circumstances has occurred, we are of opinion that the tender of the title on the 6th of November, 1876, was in equity a good answer to the claim for rescission. (*Davidson* v. *Moss*, 5 How. [Miss.] 683; *Clinton* v. *Burges*, 2 Dev. Eq. 13; *Gaunt* v. *Macomb*, 6 Call, 368; 1 Story's Eq., § 777.) It appeared that there had been no change in the value of the property from the time of the commencement of the action, and the prior depreciation, while it may entail a loss upon the plaintiff if he is compelled to stand by his bargain, furnishes we think no ground, under the circumstances of this case, for shifting it upon the defendant. We are of opinion, therefore, that the judgment in this case rescinding *in toto* the transaction in question must be reversed. But if it should be found on the new trial that it was the understanding of the parties that interest should not run on the mortgages from the payment of the last interest in November, 1873, until the title should

be perfected, we are not prepared to say that relief might not be granted to the extent of enforcing that understanding by the judgment in the action.

The judgment should be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.